## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAITH BENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SIMPLENURSING, LLC,<br><br>Defendant. | C.A.No.: 1:24-cv-01118-GBW |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)

OF COUNSEL:

Brian E. Middlebrook, Esq.
Alexandra Sandler, Esq.
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-453-0708

Justin Holmes, Esq.
**GORDON REES SCULLY MANSUKHANI, LLP**
Three Logan Square
171 Arch Street, Suite 610
Philadelphia, PA 19103

**GORDON REES SCULLY MANSUKHANI, LLP**
Michael C. Heyden, Jr. (#5616)
Joseph E. Brenner (#6643)
824 N. Market Street, Suite 220
Wilmington, DE 19801
(302) 992-8955
mheyden@grsm.com
jbrenner@grsm.com

*Attorneys for Defendant, Simplenursing, LLC*

Dated: January 3, 2025

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

      A.      Defendant SimpleNursing, LLC ............................................................... 3

      B.      Plaintiff's Allegations .............................................................................. 3

      C.      The VPPA Claim and Proposed Class .................................................... 4

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ......................................................................................................................... 5

      A.      The Complaint Must be Dismissed Because Defendant is not a "Video Tape Service Provider" under the VPPA ........................................................... 5

      B.      The Complaint Should be Dismissed Because the Complaint Fails to Allege that Defendant Disclosed Personally Identifiable Information Belonging to the Plaintiff as required by the VPPA .................................................... 7

            1.      A Facebook ID Does Not Constitute Personally Identifying Information ................................................................................. 8

            2.      Plaintiffs Claim Fails because the Allegations about Disclosure of a Subscription Service is not the Same as Disclosure of Specific Video Materials ................................................................................... 11

CONCLUSION ...................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................................... 4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................................................... 5

*Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir. 2009), *aff'd sub nom.*
  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 179 L. Ed. 2d 1
  (2011). ........................................................................................................................................ 6

*Comm'r v. Bilder*, 289 F.2d 291, 298 (3d Cir. 1961), *rev'd,* 369 U.S. 499, 82 S. Ct.
  881, 8 L. Ed. 2d 65 (1962) ........................................................................................................ 6

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .................................................................................................... 14

*Ellis v. Cartoon Network, Inc.*,
  No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on
  other grounds,* 803 F.3d 1251 (11th Cir. 2015) ........................................................................ 10

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023) ..................................................................................... 13

*Gonzalez v. Central Elec. Co-op, Inc.*
  No. CIV. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009) ........................................ 14

*Heerde v. Learfield Commc'ns, LLC*,
  No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19,
  2024) ........................................................................................................................................ 13

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......................................................................... 8, 9, 16

*In re Nickelodeon Consumer Privacy Litigation*,
  827 F.3d 262 (3d Cir. 2016) ........................................................................ 2, 6, 9,10, 11, 12, 14

*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d at 290 (3rd Cir. 2016 ......................... 2

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ........................................................................................................... 4

*Long v. Tommy Hilfiger U.S.A., Inc.*,
  671 F.3d 371 (3d Cir. 2012) ....................................................................................................... 6

*Martin v. Meredith Corporation*,
   657 F. Supp. 3d 277 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023
   WL 4013900 (2d Cir. May 24, 2023) ....................................................................... 15

*Pileggi v. Washington Newspaper Publishing Company*,
   No. CV 23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024) ...................................... 8, 9

*Pinnavaia on behalf of Pinnavaia v. Celotex Asbestos Settlement Tr.*,
   271 F. Supp. 3d 705 (D. Del. 2017), aff'd, No. 17-3184, 2018 WL 11446482
   (3d Cir. Apr. 6, 2018) ............................................................................................. 5

*Solomon v. Flipps Media, Inc.*,
   No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ....................... 13, 14

*Stark v. Patreon, Inc.*,
   635 F. Supp. 3d 841 (N.D. Cal. 2022) ...................................................................... 11

*White v. Samsung Electronic America, Inc.*,
   No. CV 17-1775, 2019 WL 8886485 (D.N.J. Aug. 21, 2019) ............................................ 11

**Statutes**

18 U.S.C. § 2710 .......................................................................................................... 1

18 U.S.C. § 2710(a)(3) ................................................................................................. 8

18 U.S.C.A. § 2710(a)(4) .............................................................................................. 5

**Rules**

Fed. R. Civ. P. § 12(b)(6) .......................................................................................... 2, 4

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) ....................................................................... 11

S. Rep. No. 100-599, at 5. (1988) ............................................................................... 1, 6

Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947
   and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the
   H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S.
   Comm. on the Judiciary, 100th Cong. 54 (1998) .................................................... 6, 7

## **INTRODUCTION**

This lawsuit is an example of one more misguided attempt by litigants to hunt out well-intended narrowly tailored laws from a pre-internet time—in this case the Video Privacy Protection Act ("VPPA")—and, through a tortured interpretation of the same, claim that common current, well-established online conduct somehow violates that statute. Here, at its root, the plaintiff, Faith Benson ("Plaintiff") through her counsel, accuses SimpleNursing, LLC ("SimpleNursing" or "Defendant") of violating the VPPA based on the claim that Defendant's alleged use of the Facebook "Meta Pixel" transmitted video viewing information to Facebook. Compl. ¶ 2.

Plaintiffs' lawsuit is deficient for several reasons. *First,* the VPPA simply does not cover the actions of an entity like SimpleNursing. *Second,* the Complaint does not establish with any particularity *any* specific tangible personally identifiable information ("PII") alleged to have been transmitted along with video information—as required by the VPPA. *See* 18 U.S.C. § 2710 (proscribing "video tape service providers" ("VTSPs") from knowingly disclosing "personally identifiable information" ("PII")—specifically, information that identifies a consumer and the "*video cassette tapes* or similar audio-visual materials" they purchased or rented—without the consumer's consent.")

The VPPA was born out of a very specific incident in American history. During Judge Robert Bork's Supreme Court confirmation hearings, a newspaper obtained and published, without Judge Bork's consent, a list of 146 films that Judge Bork and his family rented from a local video store. S. Rep. No. 100-599, at 5. (1988). This invasion of privacy prompted Congress to enact a law with the goal of "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audiovisual materials." *Id.* at 1. As is clear from a plain reading of the

1

statute, and acknowledged by the Courts,[1] the statute was intended to be construed, "quite narrow(ly)." Ignoring that, Plaintiff in this matter is attempting to stretch the law beyond its limits hoping to obtain potentially millions of dollars in damages against a defendant that *does not even qualify as a video tape service provider under the Act*. Defendant offers educational lectures as part of a broader suite of educational materials to assist nursing students in preparing for school and standardized exams such as the NCLEX-RN, TEAS, and NCLEX-PN. Educational lectures, however, are not the type of "prerecorded video cassette tapes or similar audiovisual materials" covered by the VPPA—which was directed towards the disclosure of one's recreational movie and entertainment viewing habits.

Not only does Plaintiff attempt to bring a claim against an entity that cannot violate the Act, but Plaintiff fails to adequately allege that Defendant disclosed Plaintiff's PII in violation of the VPPA. Plaintiff claims that Defendant disclosed Plaintiff's Facebook ID ("FID") and the fact that Plaintiff purchased a subscription to access the video materials or services on Defendant's website, www.simplenursing.com (the "Website"). *See* Compl. ¶ 3. An FID is not PII, however, because, pursuant to the "ordinary person" standard adopted by the Third Circuit, an ordinary person would not be able to identify Plaintiff based on Plaintiff's FID alone. *See In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d at 290 (3rd Cir. 2016). Similarly, and perhaps more importantly, disclosure of a "subscription" to access content on a website, as alleged by Plaintiff, is *not the same as disclosing actual, specific cassette tapes or audio-visual materials watched/rented* by a specific person.

Accordingly, and as discussed in more detail below, Plaintiff's VPPA claim should be dismissed pursuant to Federal Rule of Civil Procedure §12(b)(6).

---

[1] *See e.g., In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016).

## BACKGROUND

### A. Defendant SimpleNursing, LLC

Defendant is a Delaware limited liability company. Defendant operates the website, www.simplenursing.com, where it offers educational resources on a subscription basis for students preparing for nursing school and standardized exams, such as the NCLEX-RN, TEAS, and NCLEX-PN. *See* Compl. ¶ 14; *see also* SIMPLENURSING, www.simplenursing.com (last visited Dec. 30, 2024). The resources Defendant offers through these subscriptions include lectures in the form of short video-clips, study guides, and practice questions. *Id.*

### B. Plaintiff's Allegations

According to the Complaint, Plaintiff is a citizen and resident of Orange County, Florida. *See* Compl. ¶ 7. Plaintiff claims she purchased a subscription on or about June 23, 2023, to access the video products and services offered on the Website. *Id.* at ¶ 9. Plaintiff alleges that, at all times when purchasing a subscription to the Website and accessing the materials offered through her subscription, Plaintiff had a Meta account, a Meta profile, and a Facebook ID ("FID"). *Id.* at ¶ 11.

Plaintiff's allegations center on a website tool known as the "Meta Pixel," a string of code which Plaintiff alleges Defendant installed on the Website. *Id.* at ¶ 2. Plaintiff asserts whenever Plaintiff or another subscriber requested or obtained a subscription to gain access to Defendant's Website, Defendant disclosed, through the Meta Pixel, that a subscriber requested or obtained a subscription to access the video materials or services on the Website, along with FID of the subscriber, to Meta. *Id.* at ¶ 3, 52. Plaintiff alleges that the FID, a unique sequence of numbers, can be used to identify a particular person because entering the FID into the URL www.Facebook.com/FID returns the Meta profile of the person to whom the FID corresponds. *Id.* at ¶ 3. Plaintiff does not allege that her Meta profile contained any of her personal information.

3

Moreover, Plaintiff does not allege anywhere in the Complaint that Defendant disclosed to Meta specific videos Plaintiff requested or obtained from Defendant.

### C. The VPPA Claim and Proposed Class

The Complaint asserts a single cause of action against Defendant for a violation of the VPPA on behalf of Plaintiff and the proposed class. *See* Compl. ¶ 63-71. Plaintiff seeks to represent a class defined as all persons in the United States who, during the two years preceding the filing of this action, purchased a subscription to access prerecorded video materials or services from the Website while maintaining an account with Meta Platforms, Inc., f/k/a Facebook, Inc. *Id.* at ¶ 57. Plaintiff claims that Defendant violated the VPPA by disclosing Plaintiff and the class's "private viewing information" which is defined in the Complaint to include their FID and purchase of a subscription to the Website to access prerecorded video content. *Id.* at ¶¶ 3; 70.

## LEGAL STANDARD

A 12(b)(6) motion to dismiss "tests the legal sufficiency of the allegations in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed pursuant to Rule 12(b)(6) where the plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007). At a motion to dismiss stage, "[t]he Court is not obligated to accept as true 'bald assertions,' 'unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false.'" *Pinnavaia on behalf of Pinnavaia v. Celotex Asbestos*

4

*Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017), aff'd, No. 17-3184, 2018 WL 11446482 (3d Cir. Apr. 6, 2018).

## ARGUMENT

**A. The Complaint Must be Dismissed Because Defendant is not a "Video Tape Service Provider" under the VPPA**

The protections of the VPPA are narrow. To be liable under the VPPA, an entity must qualify as a "video tape service provider." A "video tape service provider" means "any person, engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or *similar audio visual materials.*" 18 U.S.C.A. § 2710(a)(4). Defendant's subscription-based educational training service is distinct from the "video tape service providers" that the VPPA was meant to regulate.

In interpreting a statute, the Court's role "is to give effect to Congress's intent, which [the Court] assume[s] is expressed in the ordinary meaning of the statutory language." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 374 (3d Cir. 2012). In addition to construing the statute's ordinary meaning, the Court must also consider "the overall object and policy of the statute and avoid constructions that produce odd or absurd results or that are inconsistent with common sense." *Id.; see also In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016) ("[A law] must be construed in light of [its] basic purpose."). Congressional intent may also be discerned by the statute's legislative history. *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir. 2009), *aff'd sub nom. Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 179 L. Ed. 2d 1 (2011).. Courts may take judicial notice of a statute's legislative history. *Comm'r v. Bilder*, 289 F.2d 291, 298 (3d Cir. 1961), rev'd, 369 U.S. 499, 82 S. Ct. 881, 8 L. Ed. 2d 65 (1962) (internal citations omitted).

In enacting the VPPA, Congress intended to protect against the public disclosure of a person's movie and entertainment viewing habits, not educational lectures a person views for a professional

5

purpose such as those included on Defendant's Website. The intent of Congress in enacting the VPPA is clear from the text of the statute and its legislative history. The formal title of the statute – "Wrongful disclosure of video tape rental or sales records"– reflects that the focus is on entertainment content demonstrating the subjective interests and proclivities of an individual. This is reinforced by the statutory language itself: The VPPA does not apply to all or any audiovisual content; it applies only to audiovisual content that is *similar* to the prerecorded video cassette tapes Congress had in mind when it enacted the VPPA. The nursing lectures available on Defendant's Website, in the form of short video clips, are not the same or even comparable to the movies that prompted the VPPA's passage.

An examination of the legislative history of the VPPA demonstrates that Congress was concerned specifically with protecting a person's privacy in the *movies* that a person watches at home, and not generally with regards to any audio or visual content they happen to observe in the course of their lives. As noted in the Senate Report, "[t]he impetus for [the VPPA] occurred when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the title of 146 *films* his family had rented from a *video store*." S. Rep. No. 100-599, at 6. (1988). Testimony in the legislative record for the statute's passage also highlight the focuses exclusively on movies, as opposed to other type of video content. During the joint hearing for the VPPA, Representative Al McCandless, the sponsor of the legislation, stated "[t]here's a gut feeling that people ought to be able to read books and watch *films* without the whole world knowing. Books and *films* are the intellectual vitamins that fuel the growth of individual thought."[2] Janlori Goldman, counsel for the American Civil Liberties Union, testified that "[t]he *movies* we view in

---

[2] Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. 54 (1998).

6

the privacy of our home and the books we borrow from the library may reveal sensitive information about us and should not be disclosed absent a compelling State interest in the information. Passage of [the Act] will be an important step towards allowing individuals to maintain some control over this information." *Id.* at 54.

That the VPPA was intended to protect against *specific disclosure of specific video content*, i.e., movies of an entertainment variety, has been reinforced by several court's interpretation of the VPPA. *See, e.g, In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (acknowledging that no "brick and mortar" store was required for an entity to be regulated by the VPPA, but holding that, "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data" but "to ban the disclosure of information connecting a certain user to certain videos."). Specifically, in *Pileggi v. Washington Newspaper Publishing Company*, the District Court for the District of Columbia noted that the defendant, a conservative news media company that provided news articles and a weekly magazine along with online video content, would likely not be considered a video tape service provider under the Act. No. CV 23-345 (BAH), 2024 WL 324121, at *8 n.7 (D.D.C. Jan. 29, 2024). The Court observed that "the treatment of the audiovisual content available on [the defendant's] website as 'similar audio visual materials' to 'prerecorded video cassette tapes,' is an expansion beyond the statute's historical context…and possibly beyond the scope of the textual tie requiring such content to be 'similar' to a video cassette tape." *Id.* Similarly, in this case a subscription to the nursing lectures available on the Website are simply too unlike the entertainment related video cassette tapes that led Congress to pass the VPPA.

**B. The Complaint Should be Dismissed Because the Complaint Fails to Allege that Defendant Disclosed Personally Identifiable Information Belonging to the Plaintiff as required by the VPPA**

Even if this Court determines that Defendant's nursing lectures qualify as "similar audiovisual materials" under the VPPA, the Complaint must be dismissed because Plaintiff fails to plead

7

sufficient facts to plausibly allege that Defendant disclosed Plaintiff's PII. To state a claim under the VPPA, "a plaintiff must allege that '[a] video tape service provider…knowingly disclose[d], to any person, personally identifiable information concerning any consumer of such provider." *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 279 (3d Cir. 2016). "Personally identifiable information under the VPPA "includes information which *identifies a person* as having requested or obtained s*pecific video materials or services* from a videotape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). Thus, the definition of "personally identifiable information" includes three factual components: (1) a consumer's identity, (2) the identity of the specific video materials, and (3) the fact that the person identified requested or obtained that material. *In re Hulu Priv. Litig.*, 86 F. Supp. at 1095 (N.D. Cal. 2015).

Here, Plaintiff alleges that Defendant disclosed her FID and the fact that she purchased a subscription to access the video materials and services on the Website. Plaintiff fails, however, to allege that an ordinary person is capable of identifying Plaintiff through the FID or that Defendant disclosed the specific video materials she requested or obtained through her subscription to the Website. Where a plaintiff in a VPPA case does not adequately allege the disclosure of personally identifiable information to a third party, that plaintiff's claim must be dismissed. *Ellis v. Cartoon Network, Inc.*, No. 1:14-CV-484-TWT, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds,* 803 F.3d 1251 (11th Cir. 2015).

### 1. A Facebook ID Does Not Constitute Personally Identifying Information

Whether an FID constitutes PII has not been addressed by this Court. However, under the test set forth by the Third Circuit in *In re Nickelodeon Consumer Privacy Litigation*, a decision binding upon this Court, an FID does not meet the definition of PII.

In *In re Nickelodeon*, the Third Circuit established a standard for determining what type of information constitutes PII. *See* 827 F.3d at 290 (3d Cir. 2016). The Third Circuit held that

"personally identifiable information under the Video Privacy Protection Act means the kind of information that would readily permit an *ordinary* person to identify a specific individual's video-watching behavior." *Id.* (emphasis added). Under this standard, with respect to an FID, it is not enough that Meta could be expected to be able to identify users based on their FIDs, but whether an "ordinary person" could use the FIDs to identify individual users. *See Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 853 (N.D. Cal. 2022). The classic example that meets the "ordinary person" standard "will always be a video clerk leaking an individual customer's video rental history." *See* 827 F.3d at 290 (3d Cir. 2016). [E]very step from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *Id.*

In *Nickelodeon*, the Court considered whether three pieces of information met this standard: (1) "a user's IP address, 'a number assigned to each device that is connected to the Internet that permits computer-specific online tracking," (2) "a user's browser and operating system settings, which comprise a so-called 'browser fingerprint,'" and (3) "a computing device's 'unique device identifier.'" *Id.* at 282. The Court concluded that all three categories of "static digital identifiers" were not PII because "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person." *Id.* at 283. The Court noted that whatever else 'personally identifiable information' meant in 1988 when the VPPA was enacted, it did not encompass the information allegedly disclosed. *Id.* at 287. Other courts who have been confronted with such digital static identifiers and applied the "ordinary person" test are in agreement. *See, for e.g., White v. Samsung Electronic America, Inc.*, No. CV 17-1775, 2019 WL 8886485, at *5 (D.N.J. Aug. 21, 2019) (holding that plaintiffs' IP addresses, MAC addresses, and zip codes do not constitute personally identifiable information).

The Third Circuit's decision in *Nickelodeon* forecloses any argument that an FID qualifies as

PII. An FID, like an IP address, is merely a sequence of numbers that is no different from the digital static identifiers at issue in *Nickelodeon*—and contains no personal information.

Plaintiff's assertion that an ordinary person could identify the individual associated with the FID by accessing the URL www.facebook/com[unencryptedFID] is not compelling. *See* Compl. ¶ 51. As an initial matter, Plaintiff does not allege that an ordinary person would even recognize the sequence of numbers as an FID or know to input it into the URL to locate the corresponding Meta profile. Even assuming an ordinary person has the technical know-how to recognize such a sequence of numbers as an FID, this multi-step investigative process does not make the FID PII. Indeed, the Third Circuit in *Nickelodeon* expressed doubt that even a social security number would qualify as PII as such information "might not be easily matched to such persons without consulting another entity, such as a credit reporting agency or government bureau." *Id.* at 283. Similarly, an ordinary person would have to resort to a third-party source – Meta – to attempt to identify the individual associated with the FID—with no guarantee that the Facebook account that was returned contained any PII of significance.

Indeed, even if this Court determines that an FID can constitute PII under the "ordinary person" standard, Plaintiff does not allege in the Complaint that her Meta profile contains any identifying information about her. For those courts that have determined an FID may constitute PII, to state a plausible claim a plaintiff must identify "personal information that can be seen on her public Facebook." *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023). For this reason, several courts have granted motions to dismiss where the complaint fails to allege that the plaintiff's Facebook Page includes personally identifying information. *See Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing the complaint because the plaintiffs

failed to allege their personal information was disclosed as they did not identify what information on their Facebook pages was viewable and could be used to identify them"); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses").

As a result, because Plaintiff's FID does not constitute PII and Plaintiff fails to allege that her Facebook profile includes any personally identifying information, Plaintiff's VPPA claim must be dismissed.

### 2. Plaintiffs Claim Fails because the Allegations about Disclosure of a Subscription Service is not the Same as Disclosure of Specific Video Materials

An essential part of a VPPA claim is that *specific video materials or services* from a video tape service provider must have been disclosed. *Solomon*, No. 22CV5508JMAJMW at *2 (E.D.N.Y. Sept. 30, 2023) (emphasis added). "Specific" means "definite; explicit; of an exact or particular nature." Black's Law Dictionary (6th ed. 1990). Courts have held that PII, by definition, must identify the particular video that a user watched. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 285 (3d. Coir. 2016) (the VPPA "protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (concluding that personally identifiable information covers information that can be used to identify any individual as having watched certain videos); *Gonzalez v. Central Elec. Co-op, Inc.* No. CIV. 08-6236-HO, 2009 WL 3415235, at *9-11 (D. Or. Oct. 15, 2009) (holding that evidence indicating the plaintiff purchased one out of fifteen movies did not support that plaintiff's personally identifiable information was disclosed in violation of the VPPA, where the evidence did not demonstrate the specific movies the plaintiff viewed).

11

Following this reasoning, district courts have dismissed VPPA claims where the plaintiff failed to identify the specific video the defendant disclosed. For example, in *Martin v. Meredith Corporation*, the plaintiff alleged that the defendant disclosed the name of the webpages the defendant's consumers accessed on its website, some of which included videos. *See* 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023). The District Court for the Southern District of New York dismissed the plaintiff's VPPA claim finding that the allegations in the complaint left out essential information for a VPPA claim, including: "(1) whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the website." *Id.* The Court noted that even for those webpages that included videos, disclosing the name or the URL associated with the video would not be sufficient to state a VPPA claim. *Id.*

Here, Plaintiff alleges that Defendant disclosed to Meta that Plaintiff requested or obtained a subscription to access the video materials or services on the Website, along with Plaintiff's FID. *See* Compl. ¶ 3; 52. Not only does Plaintiff fail to identify any specific videos that were requested or obtained by Plaintiff which were disclosed by Defendant, but she also fails to allege that Defendant disclosed Plaintiff's video history at all. Instead, Plaintiff's allegations are limited to the disclosure of the fact that Plaintiff purchased a subscription to the Website in order to access video materials. The VPPA, however, is not concerned with the disclosure of a consumer's subscription to access video materials on a website; the VPPA is concerned with the disclosure of specific video materials which were requested or obtained by a consumer.

Put differently, in the context of an actual entertainment video rental service (like Blockbuster)

12

that the VPPA was meant to cover, it would not be a violation of the VPPA for Blockbuster to reveal that someone was a consumer of its services. Rather, it is a violation if Blockbuster disclosed the specific videos requested or obtained by its consumers. Again, "[t]he point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *In re Hulu Priv. Litig.*, 86 F. Supp. at 1095 (N.D. Cal. 2015). The statute ties the definition of PII to disclosing information about specific video materials and not the fact that a consumer purchased a subscription on a website.

## CONCLUSION

Consequently, given that (1) the VPPA does not apply to SimpleNursing; (2) Plaintiff does not sufficiently allege how actual PII related to this Plaintiff was alleged disclosed; and (3) Plaintiff fails to adequately allege that Defendant disclosed specific videos or materials that Plaintiff requested or obtained, Plaintiff fails to state a cause of action under the VPPA and the Complaint must be dismissed.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ Michael C. Heyden, Jr.
Michael C. Heyden, Jr. (#5616)
Joseph E. Brenner (#6643)
824 N. Market Street, Suite 220
Wilmington, DE 19801
(302) 992-8955
mheyden@grsm.com
jbrenner@grsm.com

-and-

Brian E. Middlebrook, Esq. (*pro hac vice forthcoming*)
Alexandra Sandler, Esq. (*pro hac vice forthcoming*)
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-453-0708

13

                                                Justin Holmes, Esq. (*pro hac vice forthcoming*)
                                                **GORDON REES SCULLY MANSUKHANI, LLP**
                                                Three Logan Square
                                                171 Arch Street, Suite 610
                                                Philadelphia, PA 19103
                                                212-561-2300

Dated: January 3, 2025

## **CERTIFICATE OF SERVICE**

    The undersigned does hereby certify that, on January 3, 2025, a copy of the foregoing document was served on all counsel of record, via CM/ECF.

                                                 /s/ Michael C. Heyden, Jr.
                                                 Michael C. Heyden, Jr. (#5616)

Dated: January 3, 2025