THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAITH BENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SIMPLENURSING, LLC,<br><br>Defendant. | C.A.No.: 1:24-cv-01118-GBW |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)

OF COUNSEL:

Brian E. Middlebrook, Esq.
Justin Holmes, Esq.
Alexandra Sadler, Esq.
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-453-0708

**GORDON REES SCULLY MANSUKHANI, LLP**
Michael C. Heyden, Jr. (#5616)
Joseph E. Brenner (#6643)
824 N. Market Street, Suite 220
Wilmington, DE 19801
(302) 992-8955
mheyden@grsm.com
jbrenner@grsm.com

*Attorneys for Defendant,
Simplenursing, LLC*

Dated: February 14, 2025

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

    A.    Defendant SimpleNursing, LLC ............................................................................. 3

    B.    Plaintiff's Allegations ............................................................................................. 3

    C.    The VPPA Claim and Proposed Class .................................................................. 4

LEGAL STANDARD ...................................................................................................................... 4

ARGUMENT .................................................................................................................................... 5

    A.    The Amended Complaint Must be Dismissed Because Defendant is not a "Video Tape Service Provider" under the VPPA ...................................................... 5

    B.    The Amended Complaint Should be Dismissed Because the Disclosed Information Is Not PII As It Does Not Identify "Specific Video Materials or Services" ........................................................................................................... 8

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................................... 4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................................... 5

*Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir. 2009), *aff'd sub nom.*
  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 179 L. Ed. 2d 1
  (2011). ........................................................................................................................................ 6

*Comm'r v. Bilder*, 289 F.2d 291, 298 (3d Cir. 1961), *rev'd*, 369 U.S. 499, 82 S. Ct.
  881, 8 L. Ed. 2d 65 (1962) ......................................................................................................... 6

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ................................................................................................... 10

*Gonzalez v. Central Elec. Co-op, Inc.*
  No. CIV. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009) ........................................ 10

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................................................ 8, 12

*In re Nickelodeon Consumer Privacy Litigation*,
  827 F.3d 262 (3d Cir. 2016) ..................................................................................... 2, 6, 9, 10

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) .......................................................................................................... 4

*Long v. Tommy Hilfigeror the U.S.A., Inc.*,
  671 F.3d 371 (3d Cir. 2012) ...................................................................................................... 6

*Martin v. Meredith Corporation*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023
  WL 4013900 (2d Cir. May 24, 2023) ..................................................................................... 11

*Pileggi v. Washington Newspaper Publishing Company*,
  No. CV 23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024) ...................................... 8, 9

*Pinnavaia on behalf of Pinnavaia v. Celotex Asbestos Settlement Tr.*,
  271 F. Supp. 3d 705 (D. Del. 2017), aff'd, No. 17-3184, 2018 WL 11446482
  (3d Cir. Apr. 6, 2018) ................................................................................................................ 5

**Statutes**

18 U.S.C. § 2710 .................................................................................................................. 1

18 U.S.C. § 2710(a)(3) ......................................................................................................... 8

18 U.S.C.A. § 2710(a)(4) ..................................................................................................... 5

**Rules**

Fed. R. Civ. P. § 12(b)(6) ................................................................................................. 2, 4

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) .............................................................................. 11

S. Rep. No. 100-599, at 5. (1988) ................................................................................... 1, 6

Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947
    and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the
    H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S.
    Comm. on the Judiciary, 100th Cong. 54 (1998) ................................................... 6, 7

## **INTRODUCTION**

This lawsuit is an example of one more misguided attempt by litigants to hunt out well-intended narrowly tailored laws from a pre-internet time—in this case, the Video Privacy Protection Act ("VPPA")—and, through a tortured interpretation of the same, claim that common current, well-established online conduct somehow violates that statute. Here, at its root, the plaintiff, Faith Benson ("Plaintiff") through her counsel, accuses SimpleNursing, LLC ("SimpleNursing" or "Defendant") of violating the VPPA based on the claim that Defendant's alleged use of the "Meta Pixel" and "TikTok Pixel" transmitted video viewing information to Meta and TikTok. *See* Amended Compl. ¶ 2, 3, 4.

Plaintiff's lawsuit is deficient for a few reasons. *First,* the VPPA simply does not cover the actions of an entity like SimpleNursing. *Second,* Plaintiff does not provide any allegations to plausibly infer that the information Defendant allegedly disclosed meets the VPPA's very narrow definition of personally identifiable information ("PII"). *See* 18 U.S.C. § 2710 (proscribing "video tape service providers" ("VTSPs") from knowingly disclosing "personally identifiable information" ("PII")—specifically, information that identifies a consumer and the "*video cassette tapes or similar audio-visual materials*" they purchased or rented—without the consumer's consent.")

The VPPA was born out of a very specific incident in American history. During Judge Robert Bork's Supreme Court confirmation hearings, a newspaper obtained and published, without Judge Bork's consent, a list of 146 films that Judge Bork and his family rented from a local video store. S. Rep. No. 100-599, at 5. (1988). This invasion of privacy prompted Congress to enact a law with the goal of "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audiovisual materials." *Id.* at 1. As is clear from a plain reading of the

statute, and acknowledged by the Courts,[1] the statute was intended to be construed, "quite narrow(ly)." Ignoring that, Plaintiff in this matter is attempting to stretch the law beyond its limits hoping to obtain potentially millions of dollars in damages against a defendant that *does not even qualify as a video tape service provider under the Act*. Defendant offers educational lectures as part of a broader suite of educational materials to assist nursing students in preparing for school and standardized exams such as the NCLEX-RN, TEAS, and NCLEX-PN. Educational lectures, however, are not the type of "prerecorded video cassette tapes or similar audiovisual materials" covered by the VPPA—which was directed towards the disclosure of one's recreational movie and entertainment viewing habits.

Not only does Plaintiff attempt to bring a claim against an entity that cannot violate the Act, but Plaintiff fails to adequately allege that Defendant disclosed Plaintiff's PII in violation of the VPPA. Plaintiff claims that Defendant disclosed to Meta and TikTok Plaintiff's subscription to prerecorded video material on Defendant's website, www.simplenursing.com (the "Website"), and the URL where such materials are available for purchase. *See* Amended Compl. ¶ 3, 4. However, the disclosure of a "subscription" to prerecorded material on Defendant's Website or the URL where such video materials are available for purchase, as alleged by Plaintiff, is *not the same as disclosing actual, specific cassette tapes or audio-visual materials watched/rented* by a specific person.

Accordingly, and as discussed in more detail below, Plaintiff's VPPA claim should be dismissed pursuant to Federal Rule of Civil Procedure §12(b)(6).

## BACKGROUND

---

[1] *See e.g., In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016).

### A. Defendant SimpleNursing, LLC

Defendant is a Delaware limited liability company. *See* Amended Compl. ¶ 19. Defendant operates the website, www.simplenursing.com, where it offers educational resources on a subscription basis for students preparing for nursing school and standardized exams, such as the NCLEX-RN, TEAS, and NCLEX-PN. *See* Amended Compl. ¶ 14; *see also* SIMPLENURSING, www.simplenursing.com (last visited Dec. 30, 2024). The resources Defendant offers through these subscriptions include lectures in the form of short video-clips, study guides, and practice questions. *Id.*

### B. Plaintiff's Allegations

According to the Amended Complaint, Plaintiff is a citizen and resident of Orange County, Florida. *See* Amended Compl. ¶ 8. Plaintiff claims she purchased a subscription on or about June 23, 2023, to access the video products and services offered on the Website. *Id.* at ¶ 10. Plaintiff alleges that, at all times when purchasing a subscription to the Website and accessing the materials offered through her subscription, Plaintiff had a Meta account and profile and a TikTok account and profile. *Id.* at ¶ 12, 13.

Plaintiff's allegations center around two website tools known as the "Meta Pixel" and "TikTok Pixel." The Amended Complaint describes the Meta Pixel as a "unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and report them back to Meta." *Id.* ¶ 48. The Amended Complaint alleges that the TikTok Pixel is embedded on websites "to share website events with TikTok, measure traffic and ad campaign performance on the website, and to optimize ad campaigns for finding new customers." *Id.* ¶ 73. According to Plaintiff, whenever Plaintiff or another subscriber requested or obtained a subscription to gain access to Defendant's Website, Defendant disclosed, through the Meta Pixel, that a subscriber requested or obtained a subscription to access the video content on the Website,

3

the URL where such video materials are available for purchase, along with Facebook ID of the subscriber, to Meta. *Id.* at ¶ 3, 46, 64, 67. Plaintiff further asserts that Defendant transmitted to TikTok, through the TikTok Pixel, Plaintiff's cell phone number and unique device information, along with the fact that Plaintiff purchased a subscription to access prerecorded video material and the URL where such video materials are available for purchase. *Id.* ¶ 4, 46, 78, 79, 81. Notably, Plaintiff does not allege anywhere in the Amended Complaint that Defendant disclosed to Meta or TikTok the specific videos Plaintiff requested or obtained through her subscription from Defendant.

### C. The VPPA Claim and Proposed Class

The Amended Complaint asserts a single cause of action against Defendant for a violation of the VPPA on behalf of Plaintiff and the proposed class. *See* Amended Compl. ¶ 95-103. Plaintiff seeks to represent a class defined as all persons in the United States who, during the two years preceding the filing of this action, purchased a subscription to access prerecorded video materials or services from the Website while maintaining an account with Meta Platforms, Inc., f/k/a Facebook, Inc., and TikTok, Inc. *Id.* at ¶ 87, 88. Plaintiff claims that Defendant violated the VPPA by disclosing Plaintiff and the class's "private viewing information" which is defined in the Amended Complaint as information that reveals a particular person purchased a subscription to access prerecorded video content on Defendant's Website. *Id.* at ¶¶ 3; 4.

## LEGAL STANDARD

A 12(b)(6) motion to dismiss "tests the legal sufficiency of the allegations in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed pursuant to Rule 12(b)(6) where the plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007). At a motion to dismiss stage, "[t]he Court is not obligated to accept as true 'bald assertions,' 'unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false.'" *Pinnavaia on behalf of Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017), aff'd, No. 17-3184, 2018 WL 11446482 (3d Cir. 2018).

## ARGUMENT

### A. The Amended Complaint Must be Dismissed Because Defendant is not a "Video Tape Service Provider" under the VPPA

The protections of the VPPA are narrow. To be liable under the VPPA, an entity must qualify as a "video tape service provider." A "video tape service provider" means "any person, engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or *similar audio visual materials.*" 18 U.S.C.A. § 2710(a)(4). Defendant's subscription-based educational training service is distinct from the "video tape service providers" that the VPPA was meant to regulate.

In interpreting a statute, the Court's role "is to give effect to Congress's intent, which [the Court] assume[s] is expressed in the ordinary meaning of the statutory language." *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 374 (3d Cir. 2012). In addition to construing the statute's ordinary meaning, the Court must also consider "the overall object and policy of the statute and avoid constructions that produce odd or absurd results or that are inconsistent with common sense." *Id.; see also In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016) ("[A law] must be construed in light of [its] basic purpose."). Congressional intent may also be discerned by the statute's legislative history. *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir.

5

2009), *aff'd sub nom. Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 179 L. Ed. 2d 1 (2011).. Courts may take judicial notice of a statute's legislative history. *Comm'r v. Bilder*, 289 F.2d 291, 298 (3d Cir. 1961), *rev'd*, 369 U.S. 499, 82 S. Ct. 881, 8 L. Ed. 2d 65 (1962) (internal citations omitted).

In enacting the VPPA, Congress intended to protect against the public disclosure of a person's movie and entertainment viewing habits, not educational lectures a person views for a professional purpose such as those included on Defendant's Website. The intent of Congress in enacting the VPPA is clear from the text of the statute and its legislative history. The formal title of the statute – "Wrongful disclosure of video tape rental or sales records"– reflects that the focus is on entertainment content demonstrating the subjective interests and proclivities of an individual. This is reinforced by the statutory language itself: The VPPA does not apply to all or any audiovisual content; it applies only to audiovisual content that is *similar* to the prerecorded video cassette tapes Congress had in mind when it enacted the VPPA. The nursing lectures available on Defendant's Website, in the form of short video clips, are not the same or even comparable to the movies that prompted the VPPA's passage.

An examination of the legislative history of the VPPA demonstrates that Congress was concerned specifically with protecting a person's privacy in the *movies* that a person watches at home, and not generally with regards to any audio or visual content they happen to observe in the course of their lives. As noted in the Senate Report, "[t]he impetus for [the VPPA] occurred when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the title of 146 *films* his family had rented from a *video store*." S. Rep. No. 100-599, at 6. (1988). Testimony in the legislative record for the statute's passage also highlight the focuses exclusively on movies, as opposed to other type of video content. During the joint hearing for the VPPA,

6

Representative Al McCandles, the sponsor of the legislation, stated "[t]here's a gut feeling that people ought to be able to read books and watch *films* without the whole world knowing. Books and *films* are the intellectual vitamins that fuel the growth of individual thought."[2] Janlori Goldman, counsel for the American Civil Liberties Union, testified that "[t]he *movies* we view in the privacy of our home and the books we borrow from the library may reveal sensitive information about us and should not be disclosed absent a compelling State interest in the information. Passage of [the Act] will be an important step towards allowing individuals to maintain some control over this information." *Id.* at 54.

That the VPPA was intended to protect against *specific disclosure of specific video content*, i.e., movies of an entertainment variety, has been reinforced by several court's interpretation of the VPPA. *See, e.g, In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (acknowledging that no "brick and mortar" store was required for an entity to be regulated by the VPPA, but holding that, "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data" but "to ban the disclosure of information connecting a certain user to certain videos."). Specifically, in *Pileggi v. Washington Newspaper Publishing Company*, the District Court for the District of Columbia noted that the defendant, a conservative news media company that provided news articles and a weekly magazine along with online video content, would likely not be considered a video tape service provider under the Act. No. CV 23-345 (BAH), 2024 WL 324121, at *8 n.7 (D.D.C. Jan. 29, 2024). The Court observed that "the treatment of the audiovisual content available on [the defendant's] website as 'similar audio visual materials' to 'prerecorded video cassette tapes,' is an expansion beyond the statute's historical context…and possibly beyond

---

[2] Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. 54 (1998).

7

the scope of the textual tie requiring such content to be 'similar' to a video cassette tape." *Id.* Similarly, in this case a subscription to the nursing lectures available on the Website are simply too unlike the entertainment related video cassette tapes that led Congress to pass the VPPA.

**B. The Amended Complaint Should be Dismissed Because the Disclosed Information Is Not PII As It Does Not Identify "Specific Video Materials or Services"**

Even if this Court determines that Defendant's nursing lectures qualify as "similar audiovisual materials" under the VPPA, the Amended Complaint must be dismissed because Plaintiff fails to plead sufficient facts to plausibly allege that Defendant disclosed Plaintiff's PII. To state a claim under the VPPA, "a plaintiff must allege that '[a] video tape service provider…knowingly disclose[d], to any person, personally identifiable information concerning any consumer of such provider." *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 279 (3d Cir. 2016). "Personally identifiable information under the VPPA "includes information which identifies a person as having requested or obtained s*pecific video materials or services* from a videotape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added).

As such, an essential part of a VPPA claim is that a consumer's *specific video materials or services* requested or obtained from a video tape service provider must have been disclosed. *Solomon v. Flipps Media Inc.*, No. 22CV5508JMAJMW at *2 (E.D.N.Y. Sept. 30, 2023) (emphasis added); *In re Hulu Priv. Litig.*, 86 F. Supp. at 1095 (N.D. Cal. 2015) ("For there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a consumer's identity; 2) the identity of 'specific video materials' and 3) the fact that the person identified 'requested or obtained' that material.").

"Specific" means "definite; explicit; of an exact or particular nature." Black's Law Dictionary (6th ed. 1990). Courts have held that PII, by definition, must identify the particular video that a user watched. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 285 (3d. Cir. 2016)

8

(the VPPA "protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (concluding that personally identifiable information covers information that can be used to identify an individual as having watched certain videos); *Gonzalez v. Central Elec. Co-op, Inc.* No. CIV. 08-6236-HO, 2009 WL 3415235, at *9-11 (D. Or. Oct. 15, 2009) (holding that evidence indicating the plaintiff purchased one out of fifteen movies did not support that plaintiff's personally identifiable information was disclosed in violation of the VPPA, where the evidence did not demonstrate the specific movies the plaintiff viewed).

Following this reasoning, district courts have dismissed VPPA claims where the plaintiff failed to identify the specific video the defendant disclosed. For example, in *Martin v. Meredith Corporation*, the plaintiff alleged that the defendant disclosed the name of the webpages the defendant's consumers accessed on its website, some of which included videos. *See* 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023). The District Court for the Southern District of New York dismissed the plaintiff's VPPA claim finding that the allegations in the complaint left out essential information for a VPPA claim, including: "(1) whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the website." *Id.* The Court noted that for those webpages that included videos, disclosing the name or URL of the webpage would not be sufficient to state a VPPA claim. *Id.*

Here, Plaintiff alleges that Defendant disclosed to Meta and TikTok the subscription Plaintiff purchased to access prerecorded video material from the Website, including the URL where the

9

video materials are available for purchase. *See* Amended Compl. ¶ 3; 4. Not only does Plaintiff fail to identify any specific videos that were requested or obtained by Plaintiff which were disclosed by Defendant, but she fails to allege that Defendant disclosed Plaintiff's video history at all. Plaintiff does not allege that Defendant disclosed the specific titles of the videos that she watched. Instead, Plaintiff's allegations are limited to the disclosure of Plaintiff's subscription to access a set of video materials and the URL where such video materials are available for purchase. *See* Amended Compl. ¶ 3, 4, 46, 64, 67, 78, 79, 81. The VPPA, however, is not concerned with the disclosure of a consumer's subscription to video materials on a website or the URL where video materials are available for purchase; the VPPA is concerned with the disclosure of specific video materials which were requested or obtained by a consumer.

Put differently, in the context of an actual entertainment video rental service (like Blockbuster) that the VPPA was meant to cover, it would not be a violation of the VPPA for Blockbuster to reveal that someone was a consumer of its services. Rather, it is a violation if Blockbuster disclosed the specific videos that were requested or obtained by its consumers. Again, "[t]he point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *In re Hulu Priv. Litig.*, 86 F. Supp. at 1095 (N.D. Cal. 2015). The statute ties the definition of PII to disclosing information about specific video materials and not the fact that a consumer purchased a subscription or that a consumer accessed a URL where video materials are available for purchase. Merely alleging that Defendant disclosed a subscription to a set of video materials, some of which Plaintiff may or may not have viewed, and the URL where such materials are available for purchase, is insufficient to establish a claim under the VPPA.

## **CONCLUSION**

Consequently, given that (1) the VPPA does not apply to SimpleNursing and (2) Plaintiff

fails to adequately allege that Defendant disclosed specific videos or materials that Plaintiff requested or obtained, Plaintiff fails to state a cause of action under the VPPA, and the Amended Complaint must be dismissed.

                Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ Michael C. Heyden, Jr.
Michael C. Heyden, Jr. (#5616)
Joseph E. Brenner (#6643)
824 N. Market Street, Suite 220
Wilmington, DE 19801
(302) 992-8955
mheyden@grsm.com
jbrenner@grsm.com

-and-

Brian E. Middlebrook, Esq. (*pro hac vice forthcoming*)
Justin Holmes, Esq. (*pro hac vice forthcoming*)
Alexandra Sadler, Esq. (*pro hac vice forthcoming*)
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-453-0708

Dated: February 14, 2025

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that, on February 14, 2025, a copy of the foregoing document was served on all counsel of record, via CM/ECF.

/s/ Michael C. Heyden, Jr.
Michael C. Heyden, Jr. (#5616)

Dated: February 14, 2025