**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **FAITH BENSON**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:24-cv-01118-GBW |
| v. | |
| **SIMPLENURSING LLC**, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Dated: March 20, 2025

**COOCH AND TAYLOR, P.A.**
R. Grant Dick IV (No. 5123)
Dean R. Roland (No. 6459)
The Brandywine Building
1000 N. West St., Suite 1500
Wilmington, DE 19801
Telephone: (302) 984-3867
Facsimile: (302) 984-3939
gdick@coochtaylor.com
droland@coochtaylor.com

*Counsel for Plaintiff and Putative Class*

**OF COUNSEL:**

Elliot O. Jackson (admitted *pro hac vice*)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:  (305) 357-2107
Facsimile:  (305) 200-8801
ejackson@hedinllp.com

i

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................................. 1

II.  APPLICABLE LEGAL STANDARD .................................................................................. 3

III. ARGUMENT .......................................................................................................................... 4

   A.   Plaintiff has Plausibly Alleged that Defendant is a Video Tape Service Provider. ............ 4

   B.   Plaintiff has Sufficiently Alleged Personally Identifiable Information ............................ 10

IV. CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ........................................ 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Glickman*,
  215 F.3d 7 (D.C. Cir. 2000) .................................................................................................. 10

*Ambrose v. Bos. Globe Media Partners LLC*,
  No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) .................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 3

*Buechler v. Gannett Co., Inc.*,
  2023 WL 6389447 (D. Del. Oct. 2, 2023) ..................................................................... 2, 4, 5, 6

*Collins v. Toledo Blade*,
  720 F. Supp. 3d 543 (N.D. Ohio 2024) ................................................................................... 8

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ..................................................................................................... 3

*Fed. Trade Comm'n v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020) .................................................................................................... 3

*Feldman v. Star Trib. Media Co. LLC*,
  659 F. Supp. 3d 1006 (D. Minn. 2023) ............................................................................. 8, 11

*Flora v. County of Luzerne*,
  776 F.3d 169 (3d Cir. 2015) .................................................................................................... 3

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023) .................................................................................... 9

*Golden v. NBCUniversal Media, LLC*,
  688 F. Supp. 3d 150 (S.D.N.Y. 2023) ............................................................................... 6, 11

*Gonzalez v. Cent. Elec. Co-op, Inc.*,
  No. CIV. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009) ................................ 12, 13

*Harris v. Pub. Broad. Serv.*,
  662 F. Supp. 3d 1327 (N.D. Ga. 2023) ................................................................................. 11

*In re Hulu Priv. Litig.*,
  No. C 11–03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012.) .................................. 8, 9

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) .................................................................................................... 4

*In re Nickelodeon Consumer Priv. Litig.*,
  No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ............................................ 7

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................................... 7, 9

*Lebakken v. WebMD, LLC*,
  640 F. Supp. 3d 1335 (N.D. Ga. 2022) .................................................................................. 6

*Loan Servs. Inc. v. NEWITY LLC*,
  2023 WL 6316749 (D. Del. Sept. 28, 2023) .......................................................................... 3

*Martin v. Meredith Corp.*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) .............................................................................. 11, 12

*Mendoza v. Caesars Ent., Inc.*,
  No. 23-CV-03591, 2024 WL 2316544 (D.N.J. May 22, 2024) ............................................. 3

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ............................................................................................... 4

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ................................................................................................ 3

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
  No. CV 23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024) ..................................... 10

*Sellers v. Bleacher Rep., Inc.*,
  No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) .................................... 6

*Stark v. Patreon, Inc.*,
  635 F. Supp. 3d 841 (N.D. Cal. 2022) .................................................................................. 9

**Statutes**

18 U.S.C. § 2710(a)(1) ............................................................................................................... 11

18 U.S.C. § 2710(a)(3) ................................................................................................................. 2

18 U.S.C. § 2710(a)(4) ................................................................................................................. 5

**Other Authorities**

158 Cong. Rec. H6849–01 (Dec. 18, 2012) .................................................................................. 8

Pub. L. No. 100–618, November 5, 1988, 102 Stat 3195 ............................................................. 8

S. Rep. No. 100–599 (1988) ......................................................................................................... 8

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................. 3

Plaintiff Faith Benson, by and through undersigned counsel, submits her opposition to Defendant's Motion to Dismiss ("Motion" or "Mot.") (D.I. 13) and responds to the Defendant's Memorandum in Support of Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(B)(6) ("Mem. In Support") (D.I. 14) as follows:

## I. INTRODUCTION

Plaintiff brings this consumer class action against Defendant for violation of consumers' privacy rights as established by the Video Privacy Protection Act ("VPPA").

Defendant's customers pay for subscriptions to access prerecorded videos and other audio-visual materials on the www.simplenursing.com website (the "Website"), subscriptions which are aimed to result in success in nursing school preparations and success on standardized examinations related to nursing. To increase its customer base and boost sales in the two years preceding the filing of this action, Defendant knowingly installed two snippets of programming code designed by third parties ("Tracking Technologies") on its Website, which disclosed consumers' personally identifiable information to those third parties. The first piece of programming code was created and designed by Meta Platforms, Inc.'s ("Meta") and is known as the Meta Pixel, which Defendant installed on its Website to regularly disclose consumers' personally identifiable information to Meta. The second piece of programming code was created and designed by TikTok, Inc. ("TikTok") and is known as the TikTok Pixel, which Defendant installed on its Website to regularly disclose consumers' personally identifiable information to TikTok. Plaintiff alleges that Defendant's disclosures of her (and numerous others) personally identifiable information violated the VPPA. *See* 18 U.S.C. § 2710(b)(1). The information disclosed by the Tracking Technologies constitutes "personally identifiable information" within the meaning of the VPPA because it specifically identifies each customer by name or phone number and automatically connects the

person's name or phone number to the specific title and corresponding URL of the subscription providing access to prerecorded video content requested or obtained from Defendant's Website. *See* 18 U.S.C. § 2710(a)(3) ("the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider").

Defendant has now moved to dismiss the First Amended Class Action Complaint (the "Complaint") on two grounds: *first*, that Defendant is not a videotape service provider because "a subscription to the nursing lectures available on the Website are simply too unlike the entertainment related video cassette tapes that led Congress to pass the VPPA," *see* D.I. 14, at 5-8, and *second*, that Plaintiff has failed to allege personally identifiable information ("PII") because the Complaint allegedly does not "identify any specific videos" or "video history" that were requested or obtained by Plaintiff which were disclosed by Defendant. *See* D.I. 14, at 8-10. Contrary to what Defendant suggests, the Complaint's allegations clearly demonstrate that Defendant is a videotape service provider because it alleges throughout that Defendant sells access to a "video library of on-demand videos and lectures." *See* D.I. 11. Such is sufficient to plausibly allege Defendant is a videotape service provider. *See Buechler v. Gannett Co., Inc.,* No. CV 22-1464-CFC, 2023 WL 6389447, at *2 (D. Del. Oct. 2, 2023) (finding that "[t]he Complaint therefore plausibly implies that Gannett is a video tape service provider as defined by the Act" by alleging "that Gannett hosts websites that 'provide users with access to online articles and video content,' that Gannett 'offers the option for users to subscribe to newsletters, ... which provide access to articles and video content,' and that Gannett 'is a 'video tape service provider[ ]' because it creates, hosts, and delivers hundreds of videos on its websites ....'"); The Complaint also sufficiently alleges Defendant's disclosure of PII: it alleges throughout that the tracking technology on

2

Defendant's website transmitted the specific video subscriptions requested or obtained by Plaintiff and putative class members to Meta and TikTok. *See* D.I. 11. Such is sufficient to plausibly allege transmission of PII under the VPPA. *See e.g.*, *Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *5 (D.N.J. May 22, 2024) ("Each time [p]laintiff plays a video game on the Website, [d]efendant—through Facebook Pixel—discloses [p]laintiff's Facebook ID and the game he was playing to Facebook.").

## II.     APPLICABLE LEGAL STANDARD

To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). "Such a claim must plausibly suggest facts sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Loan Servs. Inc. v. NEWITY LLC*, 2023 WL 6316749, at *2 (D. Del. Sept. 28, 2023) (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When evaluating a motion to dismiss, the court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 351 (3d Cir. 2020) (internal quotation marks omitted). "The district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it." *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015). Indeed, "courts generally consider only the allegations contained in the complaint, exhibits attached to the

complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.  ARGUMENT

A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 279 (3d Cir. 2016) [hereinafter "*Nickelodeon II*"].  Plaintiff has clearly and sufficiently alleged all four elements here. Because Defendant challenges only the first two elements, Plaintiff will address those arguments below.

#### A. Plaintiff has Plausibly Alleged that Defendant is a Video Tape Service Provider.

Defendant first argues that it is not a videotape service provider because "a subscription to the nursing lectures available on the Website are simply too unlike the entertainment related video cassette tapes that led Congress to pass the VPPA." *See* D.I. 14 at 8.  Defendant's argument fails for two reasons. First, Defendant's argument is, as Chief Judge Connolly has described, a policy argument that "cannot supersede the clear statutory text" of the VPPA. *See e.g.*, *Buechler*, 2023 WL 6389447, at *2.  This Court should follow the Chief Judge's well-reasoned decision and reject Defendant's invitation to rewrite the VPPA.  Second, even if the Court examined the legislative history and purpose of the VPPA, the outcome results in a finding that the nursing videos at issue in this case fall within the purview of the VPPA.

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be

liable to the aggrieved person . . . ." It defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(a)(4). The operative language is "prerecorded video cassette tapes or similar audio visual materials." *Id*. The statute does not limit the definition of a video tape service provider any further. *See id*.

Here, the Complaint alleges "Defendant operates and maintains the Website www.simplenursing.com, where it sells subscriptions to access prerecorded video content on standardized examination preparation for exams. . . ." *See* D.I. 11, ¶ 19. The Complaint further details the exact material by alleging that "Defendant's paid subscriptions include exclusive access to prerecorded video content including a video library of on-demand videos and lectures." *Id.* at ¶ 62. The Complaint ties these allegations specifically to Plaintiff by alleging that, "[o]n multiple occasions during the two years preceding the filing of this action, Plaintiff used her subscription to Defendant's Website to request and obtain pre-recorded videos from Defendant." *Id.* at ¶ 11. The Complaint specifically details the exact date Plaintiff purchased the subscription to access prerecorded videos—June 23, 2023. *Id.* at ¶ 10.

These allegations are sufficient to establish Defendant is a videotape service provider for two reasons. First, the plain text of the VPPA establishes that a video subscription service that provides access to prerecorded nursing lectures or nursing educational videos is covered within the phrase "similar audio visual materials." Most instructive is Chief Judge Connolly's decision in *Buechler* where he held that, based on the plain text of the VPPA, "[a] prerecorded video on a website is an audio-visual medium that a jury could reasonably find to be similar to a prerecorded video cassette tape." *Buechler*, 2023 WL 6389447, at *2. In so holding, the Court foreclosed Defendant's incorrect reading of "videotape service provider" by emphasizing that the defined

5

term covers "*similar audio visual materials*" such as videos offered alongside or on the same page as articles. *See id*. (emphasis in original). Because the plaintiff alleged the newsletter company "delivers such videos to its subscribers via the internet[,]" Chief Judge Connolly held the "videotape service provider" element was sufficiently alleged. *Id.* The same is true here—Defendant's sale of online access to prerecorded videos falls under the plain text definition of "video tape service provider."

Courts have routinely rejected invitations by defendants to limit the type of media to which the VPPA applies. Specifically, in *Buechler*, the court rejected the newsletter company's claim that extending the VPPA to a newsletter that "delivers news and journalism primarily via written articles and still photos" stretches "the statute far beyond its intended bounds." *See Buechler*, 2023 WL 6389447, at *2. The court determined that the argument was a policy argument that was foreclosed as inconsistent with the text of the VPPA. *Id.* The same conclusion is warranted here. Here, Defendant concedes that the content on its website is in the "form of short video-clips." *See* D.I. 14 at 3. Consequently, by the plain text of the VPPA, Defendant is a video tape service provider.

Decisions from courts nationwide also support this conclusion. *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (rejecting NBCU's claim "that the content on Today.com is outside the statute's intended reach" because the VPPA "looks to a video's format, rather than its subject matter or the provider's identity."); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) ("The VPPA concerns providers of 'prerecorded video cassette tapes or similar audio visual materials' with no stated restriction as to length."); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) ("The Court concludes that Lebakken has adequately alleged that WebMD is a video tape

service provider because she alleges that WebMD is engaged in the business of delivering prerecorded audio-visual materials to consumers via its e-newsletter and its website."); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("The plain text of the statute provides otherwise . . . Congress's use of the phrase 'similar audiovisual materials' indicates that the definition is medium-neutral; the defendant must be in the business of delivering video content, but that content need not be in a particular format."). Indeed, a close and neighbor court recently determined that short video clips known as "cut scene" videos used in video games fall squarely within the purview of the VPPA. *See Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21, 2024) (finding that "the 'cut scenes' in video games are clearly 'video content' covered by the VPPA, even if they are accompanied by the active game elements of the video games that GameStop sells" and holding that because the plaintiff alleged that GameStop "is in the business of selling video games—products that include video content that is covered by the VPPA— it can be covered by the VPPA at least to the extent of those products.").[1] While Plaintiff's Complaint specifically pleads that Defendant offers "on-demand videos and lectures" without regard for the length of the video (D.I. 11, ¶ 62), *Aldana* counsels that even if Defendant's prerecorded videos are "short clips," they are within the purview of the VPPA. Defendant's motion should therefore be denied. See *Aldana*, 2024 WL 708589, at *6.

Second, even if this Court examined the legislative history and purpose of the VPPA, which it should not based on Third Circuit precedent,[2] such materials confirm the conclusion that a video subscription service providing access to nursing lectures and educational videos falls

---

[1] *See also In re Nickelodeon Consumer Priv. Litig.*, No. CIV.A. 12-07829, 2014 WL 3012873, at *9 n.9 (D.N.J. July 2, 2014) ("The Court notes that the only other court to address the issue of whether providers of streaming videos are VTSPs has found that they are, at least for pleading purposes.")[hereinafter, "*Nickelodeon I*"].
[2] *United States v. E.I. Dupont De Nemours & Co. Inc.*, 432 F.3d 161, 169 (3d Cir. 2005) ("If the meaning of the text is clear, 'there is no need to ... consult the purpose of [the statute] at all'") (alterations in original).

within the phrase "similar audio visual material*s*" as used in the VPPA.  In response to a newspaper's publication of then-Supreme Court nominee Judge Robert H. Bork's video rental history, consisting of 146 films that Judge Bork and his family had rented from a video store, Congress enacted the VPPA with a stated purpose "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials."  *See* Pub. L. No. 100–618, November 5, 1988, 102 Stat 3195, preamble; S. Rep. No. 100–599, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 4342–1.  In 2012, Congress made certain amendments to the VPPA "to reflect the realities of the 21st century," 158 Cong. Rec. H6849–01 (Dec. 18, 2012).  The 2012 amendment, however, left the definition of "videotape service provider" untouched – clearly demonstrating that Congress found the definition, as originally drafted in 1988, broad enough to continue to encompass providers of audio visual materials in the 21st century, including by bringing within its scope modern-day companies like Defendant that provide "prerecorded . . . audio visual materials" to consumers in digital mediums that did not even exist at the time of the statute's enactment in 1988.  *See Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 548 n.4 (N.D. Ohio 2024); *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012.) ("The question is whether the mechanism of delivery here—streaming versus bricks-and-mortar delivery—ends this case at the pleading stage . . . Given Congress's concern with protecting consumers' privacy in an evolving technological world, the court rejects the argument."); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (surveying and collecting cases for the same proposition).

Indeed, "the Senate Report [concerning the VPPA] confirms that Congress was concerned with protecting the confidentiality of private information about viewing preferences regardless of the business model or media format involved." *In re Hulu Priv. Litig.*, 2012 WL 3282960, at

8

\*6 (citing S. Rep. No. 100–599 at 1) (stating that the VPPA follows a long line of statutes passed by Congress to extend privacy protections to records that contain information about individuals); *id.* at 3 (quoting Senator Leahy's denouncement of the disclosures: "It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read.... In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch.... I think that is wrong, I think that is Big Brother, and I think it is something we have to guard against); *id.* at 2–4 (extensive discussion of privacy, including Supreme Court case law and noting that protecting an individual's choice of books and films is a pillar of intellectual freedom under the First Amendment).

Courts that have examined the legislative history and purpose have determined that the term "similar audio visual materials" extends to (1) "digital distribution" of videos regardless of the mechanism of delivery, *see In re Hulu Priv. Litig.*, 2012 WL 3282960, at \*6; (2) online and app-based videos exclusively available to individuals who paid subscription fees, *see Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022) ("Plaintiffs have alleged that they paid Patreon subscription fees to watch videos on its website."); (3) smart televisions, *see In re Vizio*, 238 F. Supp. 3d at 1221; and (4) videos available exclusively to a multimedia organization's digital newsletter, *see Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at \*2 (D. Mass. Sept. 19, 2022). *See also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 719 (N.D. Cal. 2023) (rejecting a defendant's argument that "short, education-focused videos . . . are too distinct to constitute audio-visual content under the statute.").[3]

---

[3] While *Ghanaat* strongly supports Plaintiff's position that "education-focused videos" fall within the purview of the VPPA's definition of "videotape service provider," that case is patently distinguishable on all other points. For

Defendant's reliance on *Pileggi v. Washington Newspaper Publ'g Co., LLC*, No. CV 23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024) is clearly incorrect. Defendant takes its entire assessment of *Pileggi*'s videotape service provider discussion from footnote 7, but fails to alert this Court of the final sentence in that footnote, which states "whether Washington Examiner, as a 'media company that operates a news website and publishes a weekly magazine,' . . . meets this definitional prerequisite by making audio-visual content accessible on its website, **need not be decided here**, as this case is resolved on other grounds." *See id*., at *8 (emphasis added). Thus, the discussion is nothing more than dicta that Plaintiff respectfully argues was incorrectly assessed because the court skipped the D.C. Circuit's requirement that a statute's plain text be assessed first for ambiguity before examining historical materials. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Glickman*, 215 F.3d 7, 11 (D.C. Cir. 2000) (reversing a district court's finding of ambiguity in a statute, when no such ambiguity existed). Accordingly, this Court should reject *Pileggi*'s dicta and follow the assessment reached by majority of courts that "similar audio visual material*s*" as used in the VPPA covers new media such as educational videos and nursing lectures. Defendant's motion should therefore be denied.

### B.  Plaintiff has Sufficiently Alleged Personally Identifiable Information

Defendant lastly argues that dismissal is appropriate because the Complaint does not "identify any specific videos that were requested or obtained by Plaintiff which were disclosed by Defendant," (D.I. 14, at 10) "allege that Defendant disclosed Plaintiff's video history at all[,]" (*id*.) or "allege that Defendant disclosed the specific titles of the videos that she watched." (*id*.) The

---

example, the court ultimately granted the motion to dismiss in *Ghanaat* based on pleading deficiencies on other elements of the VPPA claim, which are not present in the case before this Court. The court found "[P]laintiffs' allegations [] inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses." Here, not so. Plaintiff specifically alleges the contents of a Facebook page (full name, etc.) and she specifically ties those allegations to her. Accordingly, *Ghanaat* should only be considered for the "videotape service provider" element.

VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video **materials or services** from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). Because Plaintiff has alleged Defendant disclosed her specific video services—her subscription to access prerecorded video materials—Defendant's argument is meritless.

Here, the Complaint specifically alleges Defendant disclosed specific video services when it alleges "Defendant . . . knowingly disclos[ed] Plaintiff's and its other customers' identities and their purchases of subscriptions to access prerecorded video content to Meta[.]" *See* D.I. 11, ¶¶ 1, 3-4, 46, 64, 66-67, 71, 77-78, 81, 97-98. As explained above, the Complaint further connects Defendant's practices specifically to the named Plaintiff by alleging the exact date she purchased her subscription and that her information was itself disclosed by Defendant's practices. *Id.* at ¶¶ 10-11. These allegations have been routinely found to be sufficient when courts have examined disclosure of "specific video materials." *See e.g., Feldman*, 659 F. Supp. 3d at 1020–21 (finding allegation that "each time Mr. Feldman has watched video content on startribune.com, the Star Tribune 'simultaneously disclosed [his Facebook ID] and the name of the video/content that he viewed to Facebook via Facebook Pixel'" sufficient); *Golden*, 688 F. Supp. 3d at 160 ("the FAC also adequately alleges that Today.com disclosed "specific video materials"—to wit, each video's URL and name."); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023) (same). This Court should import the reasoning of these cases to the present case because Plaintiff specifically alleges that the specific subscription's title and URL were disclosed by Defendant to Meta and TikTok, *see* D.I. 11, ¶¶ 3-4, 46, 64, 66-67, 78, 80-81, 98-99, which is directly similar to the allegation that other defendants have disclosed specific video titles.

11

Defendant's reliance on *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023), is misplaced because that case involved whether a subscriber to an online magazine adequately alleged disclosure of personally identifiable information when a subscription to the website offered articles that only at times contained embedded videos with titles different from the titles of the articles, and the plaintiff did not specifically allege that the defendant transmitted the title of the videos he watched within the articles. These pleading deficiencies are ones that Defendant purports to import onto Plaintiff in this case. That is improper.

Here unlike in *Martin*, Plaintiff specifically alleges that "Defendant operates and maintains the Website www.simplenursing.com, where it sells subscriptions to access prerecorded video content on standardized examination preparation for exams. . .." *See* D.I. 11, ¶ 19. "Defendant's paid subscriptions include exclusive access to prerecorded video content including a video library of on-demand videos and lectures." *Id.* at ¶ 62. Accepting these well-pled allegations as true, as this Court must, there lies no support for the notion that Defendant's subscription contains any other material that could possibly remove it from the ambits of the VPPA. Interestingly, Defendant fails to alert this Court that, in *Martin*, "[t]he complaint acknowledge[d] that not all of People.com's content pages even include videos." *See Martin*, 657 F. Supp. 3d at 284. For good reason, because then *Martin* would not support its position.

Defendant's reliance on *Gonzalez v. Cent. Elec. Co-op, Inc.*, No. CIV. 08-6236-HO, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009), is similarly misplaced because the case supports Plaintiff's position. In *Gonzalez*, the former president and CEO of a company moved for a protective order against his former company because he claimed the company violated the VPPA when it subpoenaed a list containing the prices of movies available for rent in rooms at the Doubletree Hotel of Portland, fifteen of which are priced at $14.99 (nine are rated mature). *See*

12

*id.* at 10.  The company also obtained, in response to the subpoena, the former CEO's folio listing that he purchased a movie for $24.95 and another for $14.99.  *See id.*  The court denied the former CEO's motion finding that (1) "the combined Doubletree evidence indicating that plaintiff purchased one of fifteen movies does not constitute personally identifiable information," (2) the company lacked a "compelling need for this evidence," and (3) it is inadmissible if obtained in violation of the VPPA.  *See id.* at 11.  Thus, the *Gonzalez* court refused to find a violation of the VPPA when the movie list and folio did not disclose which of the nine videos were requested or obtained by the former CEO.  *See id.*  The opposite is true here because the exact video service– subscription to access a bundle of prerecorded videos– and the associated URL were expressly disclosed by Defendant to Meta, which is unlike the movie list in *Gonzalez*.

*Gonzalez* does however favor Plaintiff in a different sense because the court stated, "'personally identifiable information' is intended to refer to information that 'identifies a particular person as having engaged in a specific transaction with a videotape provider.'" *Gonzalez*, 2009 WL 3415235, at *11 (citing S. Rep. 100-599.)  Because Plaintiff specifically alleges Defendant disclosed the title of the specific service (video subscription) she requested or obtained on June 23, 2023 alongside the URL where that subscription is available for purchase (*See e.g.* D.I. 11, ¶¶ 64-66, 67, 78, 80-81) this "identifies a particular person as having engaged in a **specific transaction** with a videotape provider" as explained in *Gonzalez*.  Defendant's motion must therefore be denied.

    **IV.**    **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety because Plaintiff has sufficiently alleged each element of her VPPA claim.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 21, 2025 | **COOCH AND TAYLOR, P.A.** |
|  | */s/ R. Grant Dick IV* <br> R. Grant Dick IV (No. 5123) <br> Dean R. Roland (No. 6459) <br> The Brandywine Building <br> 1000 N. West St., Suite 1500 <br> Wilmington, DE 19801 <br> Telephone: (302) 984-3867 <br> Facsimile:  (302) 984-3939 <br> gdick@coochtaylor.com <br> droland@coochtaylor.com |
|  | *Counsel for Plaintiff and Putative Class* |
| **OF COUNSEL:** |  |
| Elliot O. Jackson (admitted *pro hac vice*) <br> **HEDIN LLP** <br> 1395 Brickell Ave., Suite 610 <br> Miami, Florida 33131-3302 <br> Telephone:     (305) 357-2107 <br> Facsimile:      (305) 200-8801 <br> ejackson@hedinllp.com |  |

14