THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FAITH BENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SIMPLENURSING, LLC,<br><br>Defendant. | CaseNo.: 1:24-cv-01118-GBW |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)

OF COUNSEL:

Brian E. Middlebrook, Esq. *(pro hac vice pending)*
Alexandra Sandler, Esq. *(pro hac vice pending)*
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-453-0708

Justin Holmes, Esq. *(pro hac vice pending)*
**GORDON REES SCULLY MANSUKHANI, LLP**
Three Logan Square
171 Arch Street, Suite 610
Philadelphia, PA 19103
212-561-2300

Dated: April 11, 2025

**GORDON REES SCULLY MANSUKHANI, LLP**
Michael C. Heyden, Jr. (#5616)
Joseph E. Brenner (#6643)
824 N. Market Street, Suite 220
Wilmington, DE 19801
(302) 992-8955
mheyden@grsm.com
jbrenner@grsm.com

*Attorneys for Defendant,*
*SimpleNursing, LLC*

## **TABLE OF CONTENTS**

                                                                                                                                           **Page**

I.      Plaintiff fails to establish that Defendant is a "video tape service provider" as defined in the VPPA. ................................................................................................ 2

II.     Plaintiff has not identified "specific video materials or services" that would constitute PII as required by the VPPA ............................................................... 6

CONCLUSION ............................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ....................................... 3

*Ambrose v. Bos. Globe Media Partners LLC*,
  No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ................................. 5

*Buechler v. Gannett Company, Inc.*,
  No. CV 22-1464-CFC, 2023 WL 6389447 (D. Del. Oct. 2, 2023) .......................................... 2

*Feldman v. Star Trib Media Co. LLC*,
  659 F. Supp. 3d 1006 (D. Minn 2023) ................................................................................... 6

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023) .................................................................................... 5

*Golden v. NBCUniversal Media, LLC*,
  688 F. Supp. 3d 150 (S.D.N.Y. 2023) ................................................................................. 4, 6

*Gonzalez v. Centr. Elec. Co-Op, Inc.*, No. CIV. 08-6236-HO 2009 WL 3415235
  (D. Or. Oct. 15, 2009) ............................................................................................................ 8

*Harris v. Pub. Broad. Serv.*,
  662 F. Supp. 3d 1327 (N.D. Ga. 2023) .................................................................................. 6

*In re Hulu Priv. Litig.*,
  No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ..................................... 5

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ................................................................................................... 3

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................. 5

*Lebakken v. WebMD, LLC*,
  640 F. Supp. 3d 1335 (N.D. Ga. 2022) .................................................................................. 5

*Martin v. Meredith Corp.*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) .................................................................................... 7

*Sellers v. Bleacher Rep., Inc.*,
  No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ..................................... 5

*United States v. Union Gas Co.*,
  792 F.2d 372 (3d Cir. 1986) ................................................................................................... 4

**Statutes**

8 U.S.C.A. § 2710 ............................................................................................................................. 2

**Other Authorities**

134 Cong. Rec. S5397-01 (1988) ..................................................................................................... 3

S. Rep. 100-599 (1988) .................................................................................................................... 3

S. Rep. 112-258 (2012) .................................................................................................................... 4

Plaintiff's Opposition does not and cannot rectify the essential problem with her claim—that SimpleNursing (the "Defendant") is simply not a "video tape service provider" governed by the Video Privacy Protection Act (the "VPPA").[1] The legislative history surrounding the VPPA makes clear that the statute was designed to exclusively protect video rental and purchase information, and while in the modern time there are online services that directly and purposefully offer the same subscription services as the "Blockbusters" of the 20th century (i.e. Amazon, Hulu, AppleTV, etc.) Defendant does not provide such a service. As is apparent on the face of the Amended Complaint, Defendant's website, www.simplenursing.com (the "Website"), is focused on providing educational content generally to nursing students, and its root business is not the rental or sale of recreational video materials. Applying the VPPA's legislative history to the factual realities here, as this Court must under established precedent, the VPPA does not apply to Defendant.

Moreover, Plaintiff has failed to sufficiently allege facts supporting Plaintiff's contention that Defendant disclosed Plaintiff's personally identifiable information ("PII") as defined in the VPPA. In the Amended Complaint, Plaintiff alleges only that Defendant disclosed the fact that Plaintiff purchased a subscription to access pre-recorded videos on the Website, along with the URL where the subscription is available for purchase, to Meta and TikTok. *See* Amended Complaint ¶ 3, 4. To allege, however, that Defendant disclosed Plaintiff's PII in violation of the VPPA, Plaintiff must allege facts establishing the specific video materials Plaintiff accessed or obtained through her subscription to the Website, *not the mere disclosure of the subscription service she purchased*. Plaintiff cites no case law to support the proposition that merely disclosing the fact of a subscription to access pre-recorded videos constitutes a violation of the VPPA.

---

[1] For purposes of this Reply, capitalized terms shall have the same meaning as in Defendant's opening Motion to Dismiss.

For these reasons and those discussed in more detail below, the Court should dismiss the Amended Complaint with prejudice.

## I. Plaintiff fails to establish that Defendant is a "video tape service provider" as defined in the VPPA.

A "video tape service provider" subject to the VPPA must be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or *similar audio visual materials*." 18 U.S.C.A. § 2710 (emphasis added). In her opposition, Plaintiff argues that Defendant qualifies as a "video tape service provider" for two reasons. First, Plaintiff contends that this Court is limited to analyzing the plain text of the VPPA, and the plain text of the VPPA establishes that pre-recorded nursing lectures or educational videos fall within the phrase "similar audio visual materials." Second, Plaintiff argues that even if this Court examines the legislative history of the VPPA, that history supports the conclusion that a video subscription service providing access to nursing lectures and educational videos falls within the scope of the VPPA. Neither of Plaintiff's arguments are persuasive.

Plaintiff cites *Buechler v. Gannett Company, Inc.*, in support of her first argument, where the District Court for the District of Delaware held that a newsletter company providing news and journalism primarily through written articles and still photos qualified as a "video tape service provider" under the VPPA. *See* No. CV 22-1464-CFC, 2023 WL 6389447, at *2 (D. Del. Oct. 2, 2023). The *Buechler* Court rejected the defendant's argument that applying the statute in this context was incompatible with the intended scope of the statute and declined to consider any policy concerns because it found the statutory text of the VPPA clear. *Id.*

As an initial matter, the Defendant believes the *Buechler* Court's holding improperly ignored the need to analyze the VPPA legislative intent. Further, this Court is not bound by the rationale in *Buechler*. The reality is that now, thirty-plus years after the VPPA was enacted, with

technology in existence that the VPPA enactors could not have foreseen, the VPPA *is* ambiguous with regard to the meaning of "similar" in the term "similar audio visual materials." Here, Defendant maintains that its educational lectures and materials provided by the Website are not like the pre-recorded videocassette tapes contemplated by the VPPA—a position Plaintiff disputes. The very fact that the parties have a rational disagreement about the meaning of 'similar' indicates that the statutory language of the VPPA is ambiguous. *Aldana v. GameStop, Inc*., No. 22-CV-7063-LTS, 2024 WL 708589, at *4 (S.D.N.Y. Feb. 21, 2024) ("The parties' disagreement about the meaning of 'similar' indicates that the statutory language of the VPPA is ambiguous in this context."). Accordingly, under Third Circuit precedent, this Court must consider the statute's legislative history and purpose to determine whether the nursing lectures and educational videos offered on the Website are "similar audio visuals materials." *See In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 284 (3d Cir. 2016) ("[W]hen 'the text [of a statute] is ambiguous or does not reveal congressional intent with 'sufficient precision' to resolve our inquiry[,]…'a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose.'").

The VPPA was enacted during the era of Blockbuster, when movies were predominantly distributed on videocassette tapes. After the disclosure of Judge Robert Bork's film rental history by a local video store, Congress wanted to "provide[] for a Federal cause of action in the event a list which identifies…the *movies* we watch is released." 134 Cong. Rec. S5397-01 (1988) (statement of Senator Simon) (emphasis added). This is why Congress identified different media then available for displaying movies and films at home – "laser discs, open-reel movies, or CDI technology" – as examples of "similar audiovisual materials." S. Rep. 100-599, at 12 (1988). Congress was concerned with protecting individuals' rights to privacy in the "*movies* that we watch

3

with our family in our own homes," 134 Cong. Rec. S5397-01 (1988) (statement of Senator Leahy) (emphasis added), not just any type of video content, such as educational lectures.

Further, the 2012 amendment to the VPPA confirms that Congress intended for the VPPA to protect individuals' privacy in their movie choices. Recognizing that the Internet has transformed the way American consumers consume movie and television shows and how they share their preferences for that content, Congress amended the VPPA's consent provision to allow for ongoing electronic consent. *See* S. Rep. 112-258, at 2-3 (2012). This change was intended to make it easier for "consumers to continuously share their *movie or television* preferences though social media sites." *Id.* (emphasis added). By specifically highlighting movie and television preferences, Congress clarified that the statute's protections were meant to apply to video content of an entertainment variety, rather than to video content more broadly. The fact that Congress did not revise the definition of "videotape service provider" to contemplate the broad interpretation put forth by Plaintiff demonstrates a lack of Congressional intent for the definition to encompass any and all companies that sometimes have video content on websites—an extremely common practice in the modern era. *See United States v. Union Gas Co.*, 792 F.2d 372, 382 (3d Cir. 1986) ("Congressional silence, except in the rarest of cases, is not unequivocal evidence of congressional intent."). Indeed, there is no congressional intent for entities and services like Defendant that provides educational materials generally for nursing students, but whose primary focus is not on renting or providing recreational movie or television materials to be covered by the VPPA.

The cases Plaintiff relies upon for a "broader" application of the VPPA failed to adequately address whether the video content at issue is "similar" *in any way* to the movies and films that prompted the VPPA's passage. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (failing to address whether the type of video content at issue was akin to the

4

video content meant to be covered by the VPPA); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) (same); *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (same); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (same); and *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (same). Further, the cases Plaintiff cites where courts *did consider* the statute's legislative history in finding the VPPA applicable, these were all entities that put a primary focus in their dealing with consumers to provide the film and television content that the VPPA was enacted to protect. *See e.g., In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *5-6 (N.D. Cal. Aug. 10, 2012) (classifying Hulu as a "video tape service provider" based on the film and television content it provides through its streaming service); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017) (finding that Vizio is a "video tape service provider" because its SmartTV products and apps were "intimately involved in the delivery of video content to consumers" which included access to "entertainment movies, TV shows, and more").

As acknowledged in the Amended Complaint and plainly apparent on the Website, Defendant offers educational content generally—only some of which includes video lectures designed to help students prepare for nursing exams and nursing school. *See* Amended Complaint ¶ 19. When considering the legislative history and intent of the VPPA, as this Court must, the reality is that the educational lectures on the Website are not the "film or television" inspired content that constitute "similar audio visual materials." The only similarities between the educational videos on the Website and the video cassette tapes that led Congress to pass the VPPA are that they are both pre-recorded; the Complaint does not allege that these are "film or television" audio-visual materials because the factual reality is that they are not. If Congress had intended the

5

VPPA to apply to any pre-recorded video content without regard to its subject matter, it would have drafted the statute more broadly to encompass *all* pre-recorded audio visual materials instead of pre-recorded audio visual materials *similar* to recreational video cassette tapes.

Based on the foregoing, Defendant does not qualify as a "video tape service provider," and the Court should dismiss the Amended Complaint with prejudice.

## II.     Plaintiff has not identified "specific video materials or services" that would constitute PII as required by the VPPA

Plaintiff's assertion that Defendant's disclosure of her subscription to access pre-recorded video materials on the Website satisfies the VPPA's definition of PII is meritless. In support of her position, Plaintiff cites several cases she claims involved similar allegations which were found to be sufficient under the VPPA. In each of those cases, however, the plaintiffs did not merely allege that the defendant disclosed the plaintiff's subscription to a website containing access pre-recorded video materials—*which is all Plaintiff alleges here*. Rather, the plaintiffs in those cases alleged the defendant disclosed the *actual name* of the video or the URL of the video plaintiff viewed to a third-party. *See Feldman v. Star Trib Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn 2023) (finding plaintiff's allegation that defendant disclosed the name of the video he viewed to Facebook to be sufficient under the VPPA); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023) (holding that the FAC adequately alleged that Today.com "disclosed 'specific video materials' – to wit, each video's URL and name"); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 (N.D. Ga. 2023) (finding that plaintiff adequately alleged a VPPA claim where the complaint stated that the defendant transmitted to Facebook "the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook.").

Plaintiff cites no authority where a court has found that the disclosure of a subscription to access pre-recorded video materials – without any allegations that the defendant disclosed the title

6

or name of the video or the URL where the specific video was requested or obtained – is sufficient to state a claim under the VPPA. Allowing such allegations, without more, to suffice for a VPPA claim would depart from the protections of the VPPA which regulates a disclosure only if it "identifies a person as having requested or obtained *specific* video materials or services." 18 U.S.C.A. § 2710 (emphasis added).

The rationale and holding of the *Martin v. Meredith Corp.* case cited in Defendant's opening Motion is particularly instructive to the facts of this case and Plaintiff's attempts to distinguish it are unavailing. Plaintiff ignores that the primary issue in *Martin* was whether the complaint adequately alleged that the defendant disclosed any specific video materials that plaintiff requested or obtained through her subscription to the defendant's website. *See* 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). Plaintiff argues that *Martin* does not apply because there are no allegations in the Amended Complaint that her subscription to the Website contained any material that would remove it from the ambit of the VPPA. *See* Plaintiff's Opposition ("Opp.) at 12. This argument misses the point. Even if Plaintiff's subscription was exclusively for videos, merely disclosing that Plaintiff requested or obtained a subscription *does not indicate that Defendant disclosed which specific videos Plaintiff requested or obtained* through her subscription to the Website. Indeed, in *Martin*, the Court noted that plaintiff was required to allege whether there were multiple videos on the webpage the defendant disclosed, and if so, which specific videos were requested or obtained by the plaintiff. *See* 657 F. Supp. 3d at 284 (S.D.N.Y. 2023). Such allegations are critical to a VPPA claim, and the lack of these allegations is fatal to Plaintiff's claim.

Further, despite Plaintiff's assertion, *Gonzalez v. Centr. Elec. Co-Op, Inc.* also supports Defendant's position. In *Gonzalez*, the court found that "evidence indicating that plaintiff

7

purchased one of fifteen movies does not constitute personally identifiable information" because it did not identify with specificity which video the plaintiff obtained. *Gonzalez v. Centr. Elec. Co-Op, Inc.*, No. CIV. 08-6236-HO 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009). Here, an allegation that Defendant disclosed Plaintiff's subscription which provided access to an unspecified bundle of videos, without identifying which specific videos were disclosed, does not constitute PII and is insufficient to state a claim under the VPPA, just like the court found in *Gonzalez*.[2] Indeed, Plaintiff never alleges with any specificity how her subscription was tied to particular videos, or the names of those videos.

Accordingly, this Court should dismiss Plaintiff's Amended Complaint with prejudice because Plaintiff fails to plead sufficient facts to plausibly allege that Defendant disclosed Plaintiff's PII.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ Michael C. Heyden, Jr.
Michael C. Heyden, Jr. (#5616)
Joseph E. Brenner (#6643)
824 N. Market Street, Suite 220
Wilmington, DE 19801
(302) 992-8955
mheyden@grsm.com
jbrenner@grsm.com

-and-

Brian E. Middlebrook, Esq. (*pro hac vice pending*)
Alexandra Sandler, Esq. (*pro hac vice pending*)

---

[2] To the extent Plaintiff argues that *Gonzalez* supports her position because *Gonzalez* defined PII as information identifying a particular person as having engaged in a specific transaction with a videotape service provider, this definition is incorrect and the definition of PII as set out in the VPPA governs this Court.

8

**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
212-453-0708

Justin Holmes, Esq. *(pro hac vice pending)*
**GORDON REES SCULLY MANSUKHANI, LLP**
Three Logan Square
171 Arch Street, Suite 610
Philadelphia, PA 19103
212-561-2300

Dated: April 11, 2025

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that, on April 11, 2025, a copy of the foregoing document was served on all counsel of record, via ecf.

/s/ Michael C. Heyden, Jr.
Michael C. Heyden, Jr. (#5616)
