# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-61983-WPD

CATHERINE KUEPPERS
and KATHLEEN SUMMY,
individually and on behalf of
all others similarly situated,

        Plaintiffs,
v.

ZUMBA FITNESS, LLC,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant Zumba Fitness, LLC ("Defendant" or "Zumba")'s Motion to Dismiss Plaintiff's Putative Class Action Complaint, filed herein on January 13, 2025. [DE 12]. The Court has reviewed the Motion [DE 12], the Response, filed on February 26, 2025 [DE 15], the Reply, filed March 19, 2025 [DE 20], and the arguments during the Friday, May 2, 2025 hearing and is otherwise fully advised in the premises.

**I.    Background**

Catherine Kueppers and Kathleen Summy, on behalf of a putative class, ("Plaintiffs") filed this lawsuit against Zumba seeking damages and injunctive relief under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 and alleging the following. Defendant operates the Website www.zumba.com, which offers for sale access to various prerecorded videos concerning Defendant's trademarked dance-oriented workout program. Compl. ¶ 30. Defendant has systematically transmitted and continues to transmit its customers' personally identifying video

1

viewing information to Facebook and Pinterest using snippets of code called tracking pixels. *Id.* ¶¶ 3–4. Defendant's tracking pixels capture information the specific video materials that a particular person requested or obtained on Zumba.com. *Id.* ¶ 4. The pixels transmit this information to third parties, including Facebook and Pinterest. *Id.* Zumba does not request or obtain its customers' consent prior to disclosing its customers' private video information. *Id.* ¶ 5.

Plaintiffs Kueppers and Summy purchased a Zumba Instructor Training Course from Defendant's Website. *Id.* ¶¶ 10, 20. The Course included prerecorded video materials. *Id.* Kueppers and Summy provided their name, email address, and home address in association with the purchase of these materials. *Id.* ¶¶ 11, 21. Kueppers and Summy watched these prerecorded videos while logged into Facebook during the last two years. *Id.* ¶¶ 14, 24. When Kueppers and Summy purchased access to prerecorded videos from Defendant, Defendant disclosed to Meta their FIDs coupled with URLs identifying the prerecorded video materials they purchased, among other information about Plaintiff and the device she used to make the purchase. *Id.* ¶¶ 15, 25. Kueppers and Summy never consented, agreed, authorized, or otherwise permitted Defendant to disclose their Private Video Information to Meta. *Id.* ¶¶ 16, 27.

## II.    Standard of Law

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (*abrogating Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

2

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

Nevertheless, the Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . ." *Iqbal*, 556 U.S. at 663. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Twombly, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

**III. Discussion**

Congress passed the Video Privacy Protection Act ("VPPA") in 1988 "after the *Washington City Paper* published Supreme Court nominee Robert Bork's video rental history." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (internal quotations omitted). "The paper had obtained (without Judge Bork's knowledge or consent) a list of the 146 films that the Bork family had rented from a Washington, D.C.-area video store." *Id.* Congress's intent in passing the VPPA was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1.

In 2012, Congress amended the VPPA "to reflect the realities of the 21st century." 158 Cong. Rec. H6849–01 (Dec. 18, 2012); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015). Courts seem to agree the Act has not "become a dead letter with the demise of the

3

corner video store." *Nickelodeon*, 827 F.3d at 285–86. Indeed, courts have held that websites qualify as "a video tape service provider within the VPPA." *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 157 (S.D.N.Y. 2023).

The VPPA provides, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710. In turn, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710 (a)(3). Thus, to state a claim under the VPPA, a plaintiff must allege facts showing the defendant "actually knew it was disclosing: (1) a user's identity; (2) the identity of the video material; and (3) the connection between the two—i.e., that the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).

Defendant seeks dismissal of the single-count Complaint in its entirety. First, Defendant argues Plaintiffs fail to plausibly allege a disclosure of any "personally identifying information" by Zumba because (a) Plaintiffs failed to allege Zumba disclosed PII connecting Plaintiffs to any specific video materials, and (b) Plaintiffs failed to plausibly allege the disclosure of the PII would permit an ordinary person to identify a particular person's video-watching habits. Second, Plaintiffs fail to plausibly allege Zumba knowingly disclosed Plaintiffs' personally identifying information to any third Party. The Court addresses each argument, in turn.

1. *Personally Identifiable Information*

Again: "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710 (a)(3). The Court finds the Complaint sufficiently alleges Defendant disclosed personally identifiable information within the meaning of the statute.

    a. *"Specific Video Materials"*

First, Defendant argues no disclosure was made because Defendant did not disclose information connecting plaintiffs to specific video materials—to wit, the *video titles*. Plaintiffs only allege Defendant disclosed the URL to a webpage containing the name of the training course.

The Eleventh Circuit has expressly declined to comment on what qualifies as "specific video materials." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015) ("we leave for another day the contours of the term 'personally identifiable information.'"). But most other courts to address the issue have found that the disclosure of a URL webpage containing a video qualifies as disclosure of "specific video materials" within the meaning of the statute. In *Golden*, Judge Engelmayer of the Southern District of New York wrote:

> Insofar as the statutory definition of PII includes that the identified person "requested or obtained *specific video materials* or services," 18 U.S.C. § 2710(a)(3), the FAC also adequately alleges that Today.com disclosed "specific video materials"—to wit, each video's URL and name.

688 F. Supp. 3d at 160. Many district courts to consider the question have arrived at the same or similar conclusions. *See, e.g.*, *Harris v. Pub. Broad. Serv.,* 662 F.Supp.3d 1327, 1334–1335 (N.D. Ga. 2023) (PII alleged where complaint alleged that Facebook ID, URL address, and webpage title only were disclosed); *Feldman v. Star Tribune Media Company*, 659 F.Supp.3d 1006, 1020–21 (D. Minn. 2023) ("connecting a Facebook ID to a specific person, a URL to a particular video,

5

and the specific person to the particular video is a reasonably straightforward exercise" and "electronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA"); *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073, at *3 (N.D. Tex. July 22, 2024*), report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) ("Plaintiff is not required to allege the specific videos he watched to state a claim under the VPPA"); *Ambrose v. Boston Globe Media Partners LLC*, No. 21-cv-10810-RGS, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022) (disclosure of the webpage visited via the Facebook tracking pixel stated a claim); *Czarnionka v. The Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *1 (S.D.N.Y. 2022) (same); *cf. Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *1 (N.D. Cal. 2023) (same, where complaint made general allegation that Facebook pixel disclosed name of viewed video).

These cases are directly on point and the Court agrees with their reasoning. Thus, in the absence of binding precedent on the issue, the Court joins these district courts in finding that a plaintiff bringing a VPPA claim need not allege that the specific video titles were disclosed; rather, allegations that defendant disclosed a URL to a webpage containing the video that plaintiff obtained is sufficient.

Here, Plaintiffs sufficiently allege Defendant disclosed URLs containing videos obtained by Plaintiffs when they alleged, among other facts, that:

> 102. When the purchase of an on-demand video instructor course is complete, the customer is routed to a new webpage (also hosted on Defendant's Website). This page says "YOU'RE ALL SET." It also prominently displays: (1) the name of the individual who purchased the on-demand video materials and (2) the name of the specific video materials that the person purchased.
>
> 103. The "YOU'RE ALL SET" pages also have the Meta Pixel installed. Defendant uses the Meta Pixel to transmit the URLs of these webpages, along with the FIDs

6

of the individuals who purchased the on-demand video materials and hwo [sic] are named on each page, to Meta.

Compl. ¶¶ 102–03. Defendant's contention that the allegation that Defendant disclosed the "training course" purchased (containing multiple "modules"), rather than the specific videos within the course, is of no moment for the purpose of the VPPA. Defendant doesn't argue that this training course doesn't contain *any* videos, only that it does not *exclusively* contain videos.

Defendant argues the courts in *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) and *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) impose a requirement that Plaintiff must allege the disclosure of specific video titles to state a claim under the VPPA. But *Hulu* and *Nickelodeon* do not directly address whether disclosure of the video *title* is required to state a claim under the VPPA. Those cases only state that "the statute protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched." *Nickelodeon*, 827 F.3d at 284–85 (citing *Hulu*, 2014 WL 1724344, at *8).[1] This sentiment merely echoes the plain text of the statute but makes no finding as to what qualifies as "specific video materials." Conversely, the courts to directly considered the issue (above) found that there is no technical requirement that the name of the video and not a URL link to the video page must be disclosed.[2]

Accordingly, the Court denies Defendant's motion in part on this basis.

---

[1] As it happens, in *Hulu*, the video titles were alleged. But the court made no issue of this fact, nor commented that such a finding was necessary to deny Hulu's summary judgment motion.
[2] Defendant also argues that *Martin v. Meredith Corporation*, is instructive. 657 F.Supp.3d 277 (S.D.N.Y. 2023). There, the court dismissed plaintiff's complaint, concluding that "disclosing to a third party the title of the webpage does not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page" and, so, dismissed the plaintiff's complaint for failure to state a claim under the VPPA. *Id.* at 284–85. This case appears to be an outlier, and we agree with the majority of courts that have held to the contrary.

7

b. "Ordinary Person"

Defendant asks this Court to read the VPPA as requiring that not only Meta and Pinterest, but that any "ordinary person" must have been able to link the consumer with the video. Plaintiffs argue the VPPA contains no requirement that an "ordinary person" must be able to identify Zumba's customer. Instead, Plaintiffs urge this Court to read the VPPA as requiring allegations that *Meta* and *Pinterest* tie the videos to the individuals.

The Ninth Circuit requires not only that the receiving party, but that *any ordinary person*, be able to identify the individual video consumer based upon the information disclosed, usually a numerical ID of some kind. *See Eichenberger v. ESPN*, 876 F.3d 979, 985 (9th Cir. 2017) ("The 'ordinary person' test better informs video service providers of their obligations under the VPPA."). The Third Circuit arguably[3] requires the same. *See Nickelodeon*, 827 F.3d at 267 ("[w]e [] hold that the Act's prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior.").

Conversely, the First Circuit held the term "personally identifiable information" encompasses "information reasonably and foreseeably likely to reveal which. . . videos [a person] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc*., 820 F.3d 482, 486 (1st Cir. 2016)

---

[3] There is evidence from the *Nickelodeon* opinion that the Third Circuit didn't specifically raise the standard for *who* needed to be able to tie the disclosure to an individual person. Instead, the court's holding seems to be about the ease with which *one* could draw the connection between the numerical identifier disclosed and the individual video consumer. *See Nickelodeon*, 827 F.3d at 284 ("Our review of the legislative history convinces us that Congress's purpose in passing the Video Privacy Protection Act was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an *ordinary recipient* to identify a particular person's video-watching habits.") (emphasis added). This "ordinary recipient" language suggests that its holding applies to any recipient, not an "ordinary person" in the legal sense of the term.

8

(emphasis added). Under this lighter standard, liability attaches if the *intended recipient* can connect the numerical ID to the individual. Thus, "[r]evealing a person's social security number *to the government*, for example, plainly identifies the person. Similarly, when a football referee announces a violation by 'No. 12 on the offense,' *everyone with a game program* knows the name of the player who was flagged." *Yershov*, 820 F.3d at 486 (emphases added) (finding Plaintiff sufficiently alleged disclosure of personally identifying information where Plaintiff alleged disclosure of GPS coordinates to Adobe, which possessed the "game program… allowing it to link the GPS address and device identifier to a certain person by name, address phone number, and more.").

District courts have similarly found that, so long as plaintiff alleges the receiving party can easily ascertain the individual's identity from the disclosed information, plaintiff may state a claim. *See also, e.g.*, *Hulu*, 2014 WL 1724344, at *11 ("if an anonymous, unique ID were *disclosed to a person who could understand it, that might constitute PII*.") (emphasis added); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015) (allegations of a "correlated look-up table" that would "enable Adobe to link the hashed serial number of [the plaintiff's] Roku device and his viewing choices to his identity" would satisfy the personally identifiable information pleading standard.).

The Eleventh Circuit has yet to adopt any standard.

In the absence of binding precedent, Court finds ample support from case law and from the statute itself for the proposition that, so long as the *person or entity receiving the disclosure* could reasonably and foreseeably identify which videos a person has obtained, Plaintiff sufficiently alleges a violation of the statute. *See Yershov*, 820 F.3d at 486. Here, the Complaint alleges Defendant intentionally installed the Meta Pixel which transmitted to Meta Plaintiffs' Facebook

9

IDs in conjunction with the URL link to the training course purchased. And certainly, (contrary to Defendant's ancillary point), "Meta can easily 'link' the FID to a specific user." *Li v. Georges Media Grp. LLC,* No. CV 23-1117, 2023 WL 7280519, *4 (E.D. La. Nov. 3, 2023); *see also* Compl. ¶ 51 (quoting Meta's developer guide as stating that "a Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User accounts.'").

In the alternative, Plaintiffs argue that, to the extent there *is* an ordinary person requirement, Plaintiff *has* alleged an ordinary person could tie the videos to the consumers. The Court agrees. *See Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023) (assuming without deciding the ordinary person standard applied, but finding Plaintiff nonetheless stated a claim where it alleged the Facebook ID was disclosed because "[t]he [Facebook ID] is a unique identifier that is enough, on its own, to identify a person.") (quoting *Sellers*, 2023 WL 4850180 at *4).

Defendant also argues that, as to the Pinterest claims specifically, the cookie does not constitute PII under the VPPA because it is encrypted. Plaintiffs allege that a Pinterest user's first and last name, age, gender, email address, country, region, and preferred language are directly linked to a persons s_a encrypted value, thereby purportedly allowing Pinterest to identify one particular person per s_a cookie. Defendant argues that because this encrypted cookie could not be read by an ordinary person, it therefore was not PII.

In the first instance, Defendant cites no precedent to suggest that an encrypted cookie is somehow to be treated differently than any other transmission. Defendant's cited case, *Bernadino v. Barnes & Noble Booksellers, Inc.*, does not even mention encryption. No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *8 (S.D. N.Y. Aug, 11, 2017), *report and recommendation adopted*, No. 17-CV-4570 (LAK), 2017 WL 3726050 (S.D. N.Y. Aug. 28, 2017). Second, as discussed

Case 1:24-cv-09831-VSB Document 28 Filed 06/17/25 Page 12 of 13

above, this Court declines to adopt the ordinary person standard. It suffices to allege—at this stage—that *Pinterest* would be able link the user to the video they obtained via the encrypted cookie. This Plaintiff has done.

2. *Knowingly Disclosed*

Defendant lastly argues that because Zumba never personally possessed or had access to Plaintiffs' Facebook IDs/Pinterest user IDs, it cannot be liable for allegedly transmitting those Facebook IDs/Pinterest IDs to anyone—let alone knowingly transmitting. In turn, Plaintiffs argue their allegations that Defendant intentionally installed the Meta Pixel on its site for the express purpose of obtaining users' Facebook IDs is sufficient.

The Court agrees with Plaintiff. Plaintiff has pled that "Defendant *knowingly disclosed* Plaintiffs' and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its Website, knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with its customers' unique identifiers (including [Facebook IDs])." Compl. ¶ 141 (emphasis added). We agree that "defendant's installation of pixel on its website prevents defendant from claiming transmission of information occurs independent of its action." *Czarnionka*, 2022 WL 17069810 at *3. "That the pixel [] requires Plaintiff to be logged into Facebook does not take away from Defendant's role in the transmission. . . At most, it makes Defendant's alleged actions a cause that requires some pre-existing condition; but a cause, nonetheless." *Harris*, 662 F. Supp. 3d at 1334–35. Plaintiff is not required to prove scienter at the motion to dismiss stage. These allegations suffice.

11

IV.     Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion [DE 12] is hereby **DENIED**;

2. Defendant shall file an answer to the Complaint by May 19, 2025.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 6th day of May, 2025.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of Record