**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FAITH BENSON, individually and on behalf
of all others similarly situated,

               Plaintiff,

          v.

SIMPLENURSING, LLC,

               Defendant.

Civil Action No. 24-1118-GBW

---

R. Grant Dick IV, Dean R. Roland, COOCH AND TAYLOR, P.A., Wilmington, Delaware

*Counsel for Plaintiff and Putative Class*

Michael C. Heyden, Jr., Joseph E. Brenner, GORDON REES SCULLY MANSUKHANI, LLP,
Wilmington, Delaware

*Counsel for Defendant*

**<u>MEMORANDUM OPINION</u>**

April 17, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Plaintiff Faith Benson ("Plaintiff" or "Benson") initiated this class action against Defendant SimpleNursing, LLC ("Defendant" or "SimpleNursing") on October 9, 2024. D.I. 1. On January 17, 2025, Benson filed the operative Amended Complaint and Demand for Jury Trial ("Complaint"), which alleges that SimpleNursing violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. D.I. 11. Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). D.I. 13. The Court has reviewed the parties' briefing (D.I. 14; D.I. 16; D.I. 21). For the following reasons, the Court GRANTS Defendant's Motion.

## I.   BACKGROUND

The following are factual allegations from Plaintiff's Complaint (D.I. 11) and are taken as true for the purpose of resolving Defendant's Motion.

SimpleNursing operates a website where it sells subscriptions to access prerecorded standardized examination preparation videos for nursing exams. D.I. 11 ¶ 19. SimpleNursing programmed its website to include a Meta Pixel, which is a unique string of code that allows SimpleNursing to "monitor and track the actions taken by visitors to [its] website[] and to report them back to Meta." *Id.* ¶¶ 48, 65. SimpleNursing's website also has a TikTok Pixel, which is a unique piece of code that allows SimpleNursing to "share website events with TikTok, to measure traffic and ad campaign performance on the website, and to optimize ad campaigns for finding new customers." *Id.* ¶¶ 73, 78. When an individual purchases a SimpleNursing subscription, SimpleNursing automatically transmits that individual's unique Facebook Identification Number ("FID") to Meta, and that individual's cell phone number and device information to TikTok. *Id.* ¶¶ 49, 65, 79. By sharing this information with Meta and TikTok, SimpleNursing can "take

1

advantage of the targeted advertising and other informational and analytical services offered" by those companies. *Id.* ¶¶ 65, 79.

On June 23, 2023, Benson purchased a subscription to SimpleNursing's website by creating an account and providing her email address, payment information, and zip code. *Id.* ¶ 10. At this time, Benson owned a TikTok account consisting of a profile that included her name and picture, as well as the cell phone number associated with her account. *Id.* ¶ 13. When Benson purchased the SimpleNursing subscription, she was required to provide her phone number, which was then automatically transmitted to TikTok via SimpleNursing's TikTok Pixel without her consent.[1] *Id.* ¶¶ 14, 17.

Benson's Complaint alleges that SimpleNursing's disclosure of customers' personally identifiable information ("PII") to Meta and TikTok through their respective Pixels violates the VPPA. *Id.* ¶ 1. SimpleNursing now moves to dismiss Benson's Complaint, claiming that (1) the VPPA does not apply to SimpleNursing because it is not a "video tape service provider," and (2) the information SimpleNursing transmits to Meta and TikTok does not qualify as PII. D.I. 14 at 1-2. The Court addresses the parties' arguments below.[2]

---

[1] Benson also owned a Meta account consisting of a profile that displayed her name and picture, as well as her unique FID. *Id.* ¶ 12. However, Benson has not specifically alleged that SimpleNursing conveyed her FID to Meta.

[2] The parties each submitted two notices of subsequent authority following briefing. *See* D.I. 22; D.I. 23; D.I. 25; D.I. 26. The cases cited in the parties' notices address whether a digital identifier like an FID constitutes PII. *See, e.g., Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir.), *cert. denied*, 146 S. Ct. 885 (2025) (cited in Defendant's First Notice of Subsequent Authority, D.I. 22); *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110 (W.D. Wis. 2025) (cited in Plaintiff's First Notice of Subsequent Authority, D.I. 23). Since (1) the pending Motion is resolved on other grounds, and (2) this issue was not properly briefed, the Court will not consider the authority cited in the parties' notices.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, Civ. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom,*

3

*Inc.*, C.A. No. 23-239 (KAJ), 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

## III.    DISCUSSION

For the reasons below, the Court finds that (1) Benson plausibly alleges that SimpleNursing is a video service provider under the VPPA, but (2) SimpleNursing has not disclosed Benson's PII to Meta or TikTok.  Thus, Benson fails to state any claim upon which relief can be granted as a matter of law.

### A.    Benson Plausibly Alleges That SimpleNursing Is a Video Service Provider Under the VPPA

The VPPA provides: "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4).  Benson alleges that SimpleNursing is a video tape service provider because "it is engaged in the business of selling and delivering prerecorded video materials or services, similar to prerecorded video cassette tapes." D.I. 11 ¶ 96.  SimpleNursing disagrees.  Specifically, SimpleNursing disputes the meaning of the phrase "similar audio visual materials," interpreting it to refer only to videos of an entertainment variety.  D.I. 14 at 6-7.  In so doing, SimpleNursing relies heavily on the legislative history of the VPPA, an examination of which suggests that Congress enacted the VPPA primarily with video entertainment content in mind.  *Id.* SimpleNursing also relies on court decisions that it claims bolster this reading of the VPPA.  *Id.* at 7.  Under its proposed interpretation, SimpleNursing contends that its product, a subscription to educational lectures for a professional purpose, is not a "similar audio visual material" to a prerecorded video cassette tape. *Id.* at 6.

The Court disagrees with SimpleNursing for two reasons. *First*, SimpleNursing's interpretation of "similar audio visual materials" is negated by a plain reading of the VPPA. The word "similar" qualifies not the purpose of the audio visual material, but the nature of the delivery medium. The only relevant inquiry, then, is whether SimpleNursing's delivery medium is similar to a prerecorded video cassette tape. At least one court in this district has found that "[a] prerecorded video on a website is an audio-visual medium that a jury could reasonably find to be similar to a prerecorded video cassette tape." *Buechler v. Gannett Co., Inc.*, Civil Action No. 22-1464-CFC, 2023 WL 6389447, at \*2 (D. Del. Oct. 2, 2023). This Court agrees with the reasoning in *Buechler* and thus finds that the prerecorded video content on SimpleNursing's website falls squarely under "similar audio visual materials." Since the text of the VPPA is unambiguous, the Court declines to consider the legislative history of the VPPA. *See United States v. E.I. Dupont De Nemours & Co., Inc.*, 432 F.3d 161, 169 (3d Cir. 2005) ("If the meaning of the text is clear, 'there is no need to . . . consult the purpose of [the statute] at all.'" (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004))).

*Second*, the Court disagrees with SimpleNursing's assertion that several court decisions have "reinforced" the idea that the VPPA applies only to videos "of an entertainment variety." D.I. 14 at 7. For this assertion, SimpleNursing first cites as comparison a case applying the VPPA to the conduct of an online video-streaming service provider. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015). However, the court in *Hulu* never addressed the scope of the term "video tape service provider." That the VPPA regulates online video-streaming service providers does not preclude its regulation of other types of video content providers. SimpleNursing also emphasizes the *Hulu* court's language stating that the purpose of the VPPA is to "ban the disclosure of information connecting a certain user to *certain* videos." *Id.* at 1095

5

(emphasis added). SimpleNursing implies that "certain videos" should be construed as "videos of an entertainment variety." *See* D.I. 14 at 7. But "certain" does not modify the *type* of video. Rather, "certain" relates to the *specific identity* of the video. *See Hulu*, 86 F. Supp. 3d at 1095 (noting that a triable VPPA claim requires a "connection between a specific user and the material that he 'requested or obtained'").

SimpleNursing next points to a footnote in *Pileggi v. Washington Newspaper Publishing Co.*, a case involving a media company that, "along with publishing internet news articles and a weekly magazine, delivers online video content to consumers on its website." *Pileggi v. Washington Newspaper Publ'g Co., LLC*, Civil Action No. 23-345 (BAH), 2024 WL 324121, at *2 (D.D.C. Jan. 29, 2024), *aff'd*, 146 F.4th 1219 (D.C. Cir. 2025); *see also id.* at *8 n.7. The *Pileggi* court indicated, without deciding, that the media company in that case might not be a video tape service provider under the VPPA. *Id.* at *8 n.7. In this action, SimpleNursing reasons that it is not a video service provider because it, like the media company in *Pileggi*, does not deliver videos for entertainment. D.I. 14 at 7-8.

The Court takes issue with SimpleNursing's reliance on *Pileggi* because that court resolved the case on other grounds and never decided the issue of whether the media company was a video tape service provider. Nonetheless, the dicta in *Pileggi* does not support SimpleNursing's point. There, the court noted that the media company might not be covered by the VPPA because a business must be "significantly tailored" to "delivering video content" to qualify as a video tape service provider. *Pileggi*, 2024 WL 324121, at *8 n.7 (internal quotations omitted) (quoting *Sellers v. Bleacher Rep., Inc.*, Case No. 23-cv-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023)). Thus, the VPPA might not cover every "company that creates its own video content, however ancillary to the company's purpose." *Id.* (internal quotations omitted) (quoting *Markels*

6

*v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023)). Assuming that is true for the sake of argument, the purpose of the video content (i.e., entertainment or otherwise) is irrelevant. Only the degree to which a company's purpose is tailored to delivering video content matters. Thus, *Pileggi* does not support SimpleNursing's claim that the VPPA only applies to providers of video content for entertainment.

For these reasons, Benson has plausibly pled that SimpleNursing is a video tape service provider whose conduct is covered by the VPPA.

**B.     SimpleNursing Has Not Disclosed Benson's Personally Identifiable Information Under the VPPA**

The VPPA defines "personally identifiable information" ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." § 2710(a)(3). The parties in this action specifically dispute the phrase "specific video materials or services." Benson claims that her purchase of a SimpleNursing subscription qualifies as a specific video service because she has alleged "the exact date she purchased her subscription and that her information was itself disclosed." D.I. 16 at 11; *see also* D.I. 11 ¶ 98. SimpleNursing contends that, to qualify as PII, the specific videos requested by the user must have been disclosed. D.I. 14 at 8-9. In particular, a VPPA claim must specify:

> whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the webpage.

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). Under SimpleNursing's rationale, "the disclosure of a consumer's subscription to video materials on a website or the URL where video materials are available for purchase" does not qualify as disclosure of PII. D.I. 14 at 10.

7

The Court agrees with SimpleNursing that a specific video—not just a subscription to access videos—must be disclosed. The Third Circuit has clarified that PII is "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016). This requires disclosure of the specific video obtained. *See id.*; *see also Hulu*, 86 F. Supp. 3d at 1095 (requiring disclosure of "the identity of 'specific video materials'"). Benson's Complaint alleges that a user's PII is conveyed to Meta and TikTok when that user is "completing the subscription to gain access to the prerecorded videos." D.I. 11 ¶ 64. At that time, and only then, SimpleNursing discloses the URL where the "subscription is available for purchase" from its website. *Id.* ¶ 66. Importantly, SimpleNursing never conveys the URLs for the webpages of any of its actual videos. This is where Benson's Complaint falls short. Benson's mere purchase of a subscription is insufficient to identify her specific video-watching behavior. If this Court found otherwise, SimpleNursing would violate the VPPA even if Benson never accessed a single prerecorded video. That is not the conduct the VPPA protects.

Benson's attempt to characterize the VPPA as broadly covering a subscription providing access to videos fails. In fact, even the cases that Benson cites apply the VPPA to disclosures of specific video titles or URLs of webpages containing video content. *See, e.g.*, *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (disclosing "the name of the video/content"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023) (disclosing "each video's URL and name"); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1335 (N.D. Ga. 2023) (disclosing the "content name of the video" and the URL). Moreover, Benson does not cite a case applying the VPPA to the disclosure of a subscription purchase or any webpage without video content.

8

Benson's other purported support for a broader reading of PII is *Gonzalez v. Central Elec. Co-op, Inc.*, which quotes the VPPA's legislative history describing PII as information that "'identifies a particular person as having engaged in a specific transaction with a videotape provider.'" Civ. Nos. 08-6236-HO, 08-6240-HO, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009) (quoting S. Rep. 100-599, at 12). Benson suggests that her purchase of a subscription qualifies as PII because it is a "specific transaction" with SimpleNursing. D.I. 16 at 13. The Court declines to examine this legislative history because the VPPA's text, and case law interpreting that text, unambiguously require disclosure of a specific video. *See* discussion *supra* Section III.A. Thus, since Benson's purchase of a subscription does not identify any specific videos obtained, it does not constitute PII under the VPPA.

As a matter of law, SimpleNursing's disclosures to Meta and TikTok of their customers' subscription purchases do not violate the VPPA.

## IV.    CONCLUSION

For the above reasons, the Court grants SimpleNursing's Motion to Dismiss with prejudice. The Court will issue an Order consistent with this Memorandum Opinion.